493 A.2d 421

**WARD DEVELOPMENT CO., INC.**

v.

**Nicholas J. INGRAO, et al.**

**No. 1458, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 12, 1985.

**646**

648

Thomas J. Walker, Jr., and Marilyn J. Brasier, Rockville, for appellant.

Robert W. Keene, Jr., Bethesda (James J. Cromwell, J. Bradford McCullough and Beckett, Cromwell & Myers, P.A., Bethesda, on brief), for appellees, Long & Foster and Behrens.

Garland E. Lowe, Silver Spring (Hal I. Lackey, Silver Spring, on brief), for appellees, Ingrao, et al.

Argued before MOYLAN, BLOOM and GETTY, JJ.

GETTY, Judge.

This action arose when thirteen plaintiffs, all homeowners in the Foxhall North Subdivision in Montgomery County, sued three defendants—Ward Development Co., Inc., the developer of the subdivision; Long and Foster Real Estate, Inc., Ward's real estate broker; and William Conrad Behrens, a selling agent with Long & Foster—for fraudulent and negligent misrepresentation. In a separate count the

homeowners sued Ward for breach of contract, but this claim was later withdrawn. Prior to trial, Behrens and Long & Foster filed a cross-claim against Ward seeking contribution and indemnification. The trial court granted a motion for summary judgment on the cross-claim against Ward and in favor of Behrens and Long & Foster. After a three week trial in the Circuit Court for Montgomery County, a jury returned a verdict for the homeowners on the negligent misrepresentation count and assessed damages against the defendants totaling $55,048.00. Appellant Ward now appeals from the judgments entered on the jury verdicts and from the trial court's granting of a motion for summary judgment on the cross-claim. In the interest of simplicity, we shall treat Ward's claims separately.

### Negligent Misrepresentation

■ The Foxhall North Subdivision is a residential real estate development constructed by Ward Development Co., Inc. On March 2, 1978, Ward employed Long & Foster Real Estate, Inc., to sell thirty-eight homes located in the subdivision. On April 3, 1978, Long & Foster employed William Conrad Behrens to be the selling agent for the homes. The homes involved in the present suit were sold by Behrens for Long & Foster and Ward between May 27, 1978 and March 6, 1979. As the issue presented here is in the context of a motion for directed verdict (former Rule 552), the evidentiary background will be stated in a light most favorable to the homeowners. *See Impala Platinum Ltd. v. Impala Sales (U.S.A.) Inc.*, 283 Md. 296, 328, 389 A.2d 887 (1978).

During the bargaining period for the purchase of the homes Behrens told the homeowners that the neighborhood would consist of only 38 or 39 homes and that the road going through the subdivision, Rippling Brook Drive, would dead-end and terminate permanently at the edge of the subdivision. Shortly after the homeowners purchased their homes, however, Rippling Brook Drive was extended and construction was begun on additional homes in the area. In

addition, the homeowners' contracts of sale contained the following clause:

> "The estimated cost of deferred water and/or sewer connection charge for which the purchaser is liable is $_____ payable over a period of 35 years."

Each homeowner's contract was filled in with an estimated cost of the sewer and water connection charge; the amounts varied between $250 and $900, "payable over a period of 35 years." When the homeowners received their Montgomery County tax bills for 1979, however, they discovered that their annual sewer and water connection charges were much greater than their contracts had indicated. For example, the contract of one homeowner, Arnold Kaplan, contains an estimate that his deferred water and sewer connection charge would be "$400.00 payable over a period of 35 years" (roughly, an $11.42 annual charge). Kaplan's actual deferred water and sewer connection charge for 1979 was $71.59. The other homeowners testified to similar discrepancies between the sewer and water connection charge as stated in their contracts and the charge which was actually assessed.

In order to explain the reason for the discrepancies, some background information on water and sewer benefit charges in Montgomery County is necessary. Each property owner in Montgomery County is subject to two water and sewer benefit charges. The first charge is termed a "front foot benefit assessment" and is levied to repay bonds sold by the Washington Suburban Sanitary Commission to finance the costs of main water and sewer lines constructed during a given year. The second charge, termed a "house connection charge," is levied to recover the construction costs for connecting water and sewer lines to individual homes. The front foot benefit assessment is an annual charge for 33 years but may also be paid off at any time in one lump sum. The house connection charge is in the nature of a lump sum, but may be deferred and paid off in installments over a 33-year period.

In the instant case the amount Behrens stated in each property owner's contract to be the "sewer and/or water connection charge ... payable over 35 years" was actually Ward's estimate of a combined total of the property owner's house connection charge plus his front foot benefit assessment for one year (1979).

At the conclusion of the trial, the jury returned verdicts in favor of the homeowners as follows:

(a) No finding of fraud as to any defendant;

(b) $6,006 against all defendants (jointly and severally) for damages incurred as a result of negligent misrepresentation as to the extension of Rippling Brook Drive;

(c) $13,494 against all defendants (jointly and severally) incurred as a result of negligent misrepresentation as to the sewer and water annual assessments;

(d) $41,554 against defendant Ward solely, incurred as a result of negligent misrepresentation as to the sewer and water annual assessments.

Ward now asserts that the trial court erred in denying Ward's motion for directed verdict as to the homeowners' claim for negligent misrepresentation of their sewer and water connection charges.[1] Ward argues that the homeowners' evidence of a negligent misrepresentation was legally deficient in two respects, to-wit:

A. The homeowners failed to show a misrepresentation of a material fact.

B. The homeowners failed to show a misrepresentation as to a past or existing fact.

For the following reasons, we find that the trial court did not err in denying Ward's motion for a directed verdict.

The tort of negligent misrepresentation is one of recent origin in Maryland. The Court of Appeals initially recognized the cause of action in 1938, in *Virginia Dare Stores, Inc. v. Schuman*, 175 Md. 287, 1 A.2d 897 (1938). In

---

1. Ward does not appeal from the jury's award of damages for the misrepresentation as to the extension of Rippling Brook Drive.

*Virginia Dare*, the plaintiff, who was employed to clean the walls of the defendant's store, stepped on a glass display case in reliance upon the store manager's assurance that it was safe to do so. The display case collapsed, causing the plaintiff serious personal injury. In allowing the plaintiff to recover for negligent misrepresentation, as a cause of action separate from one in fraudulent misrepresentation (deceit), the Court of Appeals stated:

> "No Maryland case has been found directly upon the subject, but the weight of authority in other jurisdictions seems to be that such action is not necessarily confined to injuries arising from contractual relations; that the action lies for negligent words, recovery being permitted where one relies on statements of another, negligently volunteering an erroneous opinion, intending that it be acted upon, and knowing that loss or injury are likely to follow if it is acted upon." *Id.* at 291–92, 1 A.2d 897.

The Court of Appeals later extended negligent misrepresentation to compensate economic loss as well as physical injury. *See St. Paul at Chase v. Manufacturer's Life Insurance*, 262 Md. 192, 278 A.2d 12 (1971); *Brack v. Evans*, 230 Md. 548, 187 A.2d 880 (1963). In both *St. Paul at Chase* and *Brack*, the Court noted that the parties had a special relationship with each other which justified the plaintiff's reliance on the truth of the defendant's statements. In *Brack*, the plaintiff sued his stockbroker for negligently and incorrectly advising him concerning a stock purchase. 230 Md. at 554, 187 A.2d 880. In *St. Paul at Chase*, the Court allowed a mortgage broker's client to recover losses he incurred relying on the mortgage broker's advice. 262 Md. at 219, 278 A.2d 12.

■ Most recently, the Court of Appeals reaffirmed the existence of the tort of negligent misrepresentation and extended the application of the cause of action to include arms-length commercial transactions. In *Martens Chevrolet v. Seney*, 292 Md. 328, 439 A.2d 534 (1982), the Court sought to clarify seeming confusion regarding the viability

of the tort of negligent misrepresentation in Maryland. The Court overruled a prior decision, *Delmarva Drill Co. v. Tuckahoe*, 268 Md. 417, 302 A.2d 37 (1973) to the extent that case cast doubt on the existence of negligent misrepresentation as an avenue for tort recovery in Maryland. *Martens Chevrolet*, 292 Md. at 336, 439 A.2d 534. The Court then outlined the principal elements of negligent misrepresentation as follows:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Id.* at 337, 439 A.2d 534. The *Martens* Court went on to hold that the buyer of an automobile dealership could bring an action for negligent misrepresentation against the seller for allegedly misinforming the buyer regarding the dealership's financial status. *Id.* at 337–38, 439 A.2d 534.

■ Turning now to the present case, Ward argues that the trial court erred in denying Ward's motion for a directed verdict because the homeowners failed to prove that the misrepresentation regarding the sewer and water connection charge was a material one. We note first that nowhere in the *Martens* opinion does the Court of Appeals specify that the misrepresentation of a "material fact" is an element of the tort of negligent misrepresentation. An element which is specified, however, is that the plaintiff must justifiably take action in reliance on the misrepresentation. *See id.* at 337, 439 A.2d 534. The requirement of justifiable reliance is, by implication, inextricably bound up with the requirement of materiality. *See* Restatement (Second) of

Torts § 538(1) (1977) (fraudulent misrepresentation); *Babb v. Bolyard,* 194 Md. 603, 609, 72 A.2d 13 (1950); *compare* Restatement (Second) of Contract § 164. An immaterial representation could not, by definition, influence the reasonable man. We conclude, therefore, that for a plaintiff justifiably to take action in reliance on a statement, that statement must be a representation of a material fact. *See also* Fleming, J. and Gray, O., *Misrepresentation,* 37 Md.L. Review 488, 497–502 (1978) (hereinafter Fleming and Gray).

■ In defining what is meant by a material fact, Ward quotes the following language from *Babb v. Bolyard,* 194 Md. 603, 72 A.2d 13 (1950): "[t]he fraud must be material, by which is meant, without it, that the transaction would not have been made." *Id.* at 609, 72 A.2d 13. We find a better definition of what constitutes a material fact in Restatement (Second) of Torts, § 538 (1977):

> "The matter is material if (a) a reasonable man would attach importance to its existence or non-existence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it."

In the instant case, at least one of the homeowners testified that had she known that the actual sewer and water connection charge was as great as it was, she would have contemplated the contract further or at least have done additional comparative shopping. This testimony and the evidence as a whole compels us to conclude that the question of whether the misrepresentation regarding the sewer and water connection charge was one of a material fact was one properly submitted to the jury.

Ward next asserts that the homeowners failed to show that the misrepresentation of the sewer and water connection charge was a representation of a past or existing fact. Ward argues that the statement regarding the charge was

merely an estimate and cannot therefore be the basis for a suit for negligent misrepresentation. We disagree. The Court of Appeals has stated that an action for fraudulent misrepresentation will not lie for the unfulfillment of promises or the failure of future events to materialize as predicated. *Delmarva Drill Co. v. Tuckahoe,* 268 Md. 417, 427, 302 A.2d 37 (1973); *Appel v. Hupfield,* 198 Md. 374, 379, 84 A.2d 94 (1951); *see Levin v. Singer,* 227 Md. 47, 175 A.2d 423 (1961). The present case is distinguishable.

We recognize the difference between a promise of future events and an estimate by one knowledgeable in a particular field. In the latter situation, redress may be had for representations as to future facts and not merely as to past or existing facts. *See Stewart v. Phoenix National Bank,* 49 Ariz. 34, 64 P.2d 101 (1937). As stated by the commentators Fleming and Gray, *supra,* at 503, "[i]t is not surprising ... that courts have been increasingly willing to hold predictive statements material where the circumstances indicate to the addressee that the speaker has a factual basis for his predictions so that the existence of facts is implied by the representations." In the instant case, the homeowners relied on Ward and its agents as knowledgeable in the field of real estate. Ward, as the developer of the subdivision, and Behrens, as the real estate selling agent, held themselves out as knowledgeable in matters such as the charge for a sewer and water connection. The homeowners were entitled to rely on that estimate to a reasonable extent. But the charge stated in the contract was so far removed from the actual charge it cannot properly be termed a reasonable estimate and can only be explained as a misrepresentation. Therefore, we hold that the estimate of the sewer and water connection charge was actionable under a theory of negligent misrepresentation. Following the standard of review specified in *Impala Platinum,* 283 Md. at 328, 389 A.2d 887, we find that the testimony and evidence presented, viewed in the light most favorable to the homeowners, generated a question of fact as to whether a case of negligent misrepresentation was

made out against Ward. The trial court did not err in denying Ward's motion for a directed verdict.

Next, Ward asserts that the trial court erred in denying Ward's motion for a new trial on the issue of damages relating to the negligent misrepresentation of the sewer and water connection charges. At the conclusion of the trial the trial court instructed the jury regarding damages as follows:

"Thirdly, the basis upon which the plaintiffs are entitled to recover damages involve[s] two separate and distinct areas of damage which must be separately considered by you.

One, the loss in value of the home in question because of the extension of Rippling Brook Drive; two, the loss occasioned by being required to make annual payments for deferred water and sewer connection charges of an amount estimated in the contract with the Washington Suburban Sanitary Commission as opposed to a single payment spread over 33 or 35 years.

\* \* \* \* \* \*

As to the damages for the alleged misrepresentations with respect to the sewer and water charges, the measure of damage is the present value of an amount of money for the charges payable annually over a period of years.

\* \* \* \* \* \*

Now, you are not to base your damages on conjecture or calculation, but only on the evidence as it has been produced in this case."

In the course of the jury's deliberation the jury sent a note to the judge which read as follows:

"In your instructions re damages, did you intend that your reference to water and sewer charges should refer to front foot benefit charges or connection charges or both?"

The judge responded:

"All right, I may have been a little sloppy in my instructions at that point, but what I intended to convey to you

was the language of the contract. Now you have got that language and it is your job to determine what was intended by that language."

At the trial Long & Foster presented uncontradicted evidence in the form of testimony from a financial expert as to the present value [2] of each homeowner's actual sewer and water connection charge. The expert also calculated the present value of each homeowner's sewer and water connection charge combined with his front foot benefit assessment. The following table reflects what was proved to be these two values, what was stated in each homeowner's contract, and what was awarded by the jury.

| Homeowner | Present Value of Actual Connection Charge at 10% Interest | Present Value of Actual Connection Charge + Front Foot Benefit Assessment at 10% Interest | Connection Charge Stated in Contract | Damages Awarded By Jury |
|---|---|---|---|---|
| Ingrao | $684.11 | $3,794.59 | $350.00 | $3,753.00 |
| Kambanis | 777.90 | 4,717.13 | 250.00 | 4,665.00 |
| Miller | 684.11 | 3,794.59 | 300.00 | 3,749.00 |
| Kaplan | 684.11 | 4,167.88 | 400.00 | 4,122.00 |
| Bryan | 777.90 | 3,887.67 | 350.00 | 3,845.00 |
| Doman/McCarthy | 684.11 | 4,748.67 | 444.00 | 4,696.00 |
| Falcone | 684.11 | 3,794.81 | 335.00 | 3,749.00 |
| Feldman | 777.90 | 5,339.22 | 900.00 | 5,281.00 |
| Ishio | 684.11 | 5,246.15 | 900.00 | 5,189.00 |
| Kiminas[3] | 684.11 | 3,887.67 per year | 70.00 | 3,203.00 |
| Oakrum | 777.90 | 3,929.14 | 755.00 | 3,886.00 |
| Gaylord | 777.90 | 4,509.76 | 500.00 | 4,460.00 |
| Rouse | 684.11 | 4,499.63 | 675.00 | 4,450.00 |

---

2. A present value calculation is made from a set of standard financial tables and reflects the present value of a sum of money that is to be paid over a period of years, recognizing that interest can be earned on the money in the meantime.

3. As to Kiminas, the only homeowner whose contract stated an estimate of the sewer and water connection charge closely approximating the actual charge, the trial court granted Ward's motion for a judgment n.o.v. The jury's final award of damages was therefore reduced by the amount of $3,203.00.

■ Although there is no case law in Maryland regarding the measure of damages for a suit based in negligent misrepresentation, there is authority regarding what damages are appropriate in a suit based on fraudulent misrepresentation (deceit). In *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A.2d 42 (1971), the Court of Appeals adopted the minority "flexibility theory" first set forth in the case of *Selman v. Shirley*, 161 Or. 582, 609, 85 P.2d 384 (1938), *aff'd on rehearing*, 161 Or. 582, 91 P.2d 312 (1939). This flexible approach utilizes the following four rules as a guide for the proper measure of damages in cases of fraudulent misrepresentation.

"(1) If the defrauded party is content with the recovery of only the amount that he actually lost, his damages will be measured under that rule;

(2) if the fraudulent representation also amounted to a warranty, recovery may be had for loss of the bargain because a fraud accompanied by a broken promise should cost the wrongdoer as much as the latter alone;

(3) where the circumstances disclosed by the proof are so vague as to cast virtually no light upon the value of the property had it conformed to the representations, the court will award damages equal only to the loss sustained; and

(4) where * * * the damages under the benefit-of-the-bargain rule are proved with sufficient certainty, that rule will be employed."

*Hinkle*, 262 Md. at 511–12, 278 A.2d 42. We perceive no reason why this flexible approach should not be applied to cases of negligent as well as fraudulent misrepresentation.

■ In the case *sub judice* the jury's award of damages to the homeowners is insupportable under any theory of damages. The jury apparently chose to award the homeowners the present value of their actual house connection charge and front foot benefit assessment. This result is contrary to Maryland law and the facts of this case. We note that the trial court's jury instructions regarding damages failed to state that the jury must subtract the amount stated as the sewer and/or water connection charge in each homeowner's contract from the actual charge, to arrive at the proper measure of damages. *See Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A.2d 42 (1971).

■ We note further that the jury's award of damages presumes that the estimate stated in the homeowners' contracts included both the sewer and water connection charge *and* the front foot benefit assessment. This presumption is contrary to the plain language of the homeowners' contracts which clearly labels the estimate as a "sewer and/or water *connection* charge" (emphasis included). The trial judge recognized that the contract referred only to the connection charge because he granted a motion for judgment n.o.v. as to homeowner Kiminas, the only plaintiff whose contract contained a correct estimate of the connection charge. Nevertheless, the trial court refused to grant a motion for a new trial on the issue of damages because of the excessiveness of the other verdicts. Under these circumstances we find that the jury's award of damages is clearly excessive and cannot stand. This Court may review the actions of a trial court in denying a motion for a new trial only under extraordinary circumstances. *See Conklin v. Schillinger*, 255 Md. 50, 68–70, 257 A.2d 187 (1969). The instant case presents just such circumstances.

### The Motion for Summary Judgment

For purposes of reviewing Ward's second claim in this appeal, a brief review of the procedural history of the case is necessary. Prior to trial of this action, Long & Foster

and Behrens filed a cross-claim against Ward for contribution and indemnification alleging that, at all times, Long & Foster and Behrens were the agents of Ward and acting within the scope of their employment in their dealings with the homeowners. On June 9, 1983, Long & Foster and Behrens submitted to Ward a Request for Admission of Facts. The facts sought to be admitted or denied were stated as follows:

1. That Long & Foster Real Estate, Inc. and William Conrad Behrens, at all times relevant hereto, were acting as agents for a disclosed principal, namely, Ward Development Company, Inc.

2. That Long & Foster Real Estate, Inc. and William Conrad Behrens at all times relevant hereto, did in fact, act solely upon information provided by Ward Development Company, Inc.

3. That Long & Foster Real Estate, Inc. and William Conrad Behrens at all times relevant hereto, had a right to rely upon the accuracy of the information provided by Ward Development Company, Inc.

4. That all acts by Long & Foster Real Estate, Inc. and William Conrad Behrens were ratified by Ward Development Company, Inc.

Ward made no response, however, to the request for admission. On November 9, 1983, Long & Foster and Behrens filed a motion for summary judgment against Ward based on the admission of facts. This motion was denied on the basis that Ward intended to seek relief, by separate motion, from the admission of facts which were deemed admitted pursuant to Md.Rule 2–424(b). Ward subsequently filed a Motion to Permit Filing of Answers to Request for Admission of Facts and a Motion to Permit

Withdrawal of the Deemed Admission of Facts. Both motions were denied.

On January 31, 1984, at the close of the plaintiff's case in the circuit court, Long & Foster and Behrens renewed their Motion for Summary Judgment against Ward. The trial court denied this motion on the ground that the request for admission went to mixed questions of law and fact and was therefore improper. During the same hearing on the Motion for Summary Judgment, the trial court reversed itself on this ruling and declined to relieve Ward from admissions numbers 1, 2 and 4. At that point, Long & Foster renewed its Motion for Summary Judgment against Ward which, this time, was granted.

Ward's initial appeal to this Court was dismissed on August 14, 1984, because there had been no entry of final judgment on Long & Foster's cross-claim for contribution and indemnity against Ward.

█ On September 28, 1984, the trial court, having expressly found no just reason for delay, directed entry of final judgment as to each of the plaintiffs' (homeowners') claims pursuant to Md.Rule 2–602. Ward now comes to this Court a second time with several reasons why the trial court erred in granting Long & Foster's Motion for Summary Judgment. We must again decline to rule on Ward's grounds for appeal because we find that there has been no entry of final judgment on Long & Foster's cross-claim.

█ We note initially that the judgment entered against Ward on the cross-claim is not an appealable final judgment because we said it was not final in our Order of Dismissal of appellee's first appeal, and that is the law of the case. *See Van Der Vlugt v. Scarborough,* 51 Md.App. 134, 137, 441 A.2d 1105 (1982). Our dismissal was predicated on the fact that, in Maryland, the right of contribution and indemnification accrues at the time a party "suffers or

pays a judgment or settles with the plaintiff." *Read Drug and Chemical Co. v. Colwill Construction Co.,* 250 Md. 406, 422–23, 243 A.2d 548 (1968); *see Associated Transport, Inc. v. Bonoumo,* 191 Md. 442, 62 A.2d 281 (1948). An entry of judgment on a claim for contribution or indemnification is not a final judgment for purposes of Md.Rule 2–602 because such judgment does not finally settle the rights of the parties or conclude their cause. *See Highfield Water Co. v. Washington County Sanitary District,* 295 Md. 410, 456 A.2d 371 (1983); *Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979). For us to rule otherwise would, in the present case, allow Long & Foster and Behrens the right to collect an undetermined sum of money from Ward prior to the homeowners' attempt to collect any money from Long & Foster and Behrens. Such a result is clearly insupportable under Md.Rule 2–602.

■ Our conclusion in this case is not changed by the trial court's September 28, 1984 Order that the judgments entered in favor of the homeowners be declared final. This Order clearly refers only to the homeowners' judgments. The Order is silent as to the summary judgment entered in favor of Long & Foster and Behrens and against Ward. Therefore, Ward's appeal as to Long & Foster and Behrens is premature. Accordingly, we must dismiss.[4]

JUDGMENT AFFIRMED AS TO LIABILITY FOR MIS-REPRESENTATION AS TO WATER AND SEWER CONNECTION CHARGES. REMANDED FOR NEW TRIAL ON THE ISSUE OF DAMAGES RESULTING THERE-FROM.

---

**4.** We have considered the appellees' Motions for Attorneys Fees and Costs pursuant to Md.Rule 1–341 and decline to grant the requested relief.

APPEAL FROM CROSS–CLAIM OF LONG & FOSTER AND BEHRENS DISMISSED.

COSTS TO BE PAID BY APPELLANT.