**FLOW INDUSTRIES, INC.**

v.

**FIELDS CONSTRUCTION CO., et al.**

**Civ. No. JFM–85–3049.**

United States District Court,
D. Maryland.

March 7, 1988.

---

Daniel M. Twomey, Hessey & Hessey, Baltimore, Md., for plaintiff.

Richard C. Whiteford, Whiteford, Taylor & Preston, Baltimore, Md., Baynard Z. Hochberg, Towson, Md., Robert L. Flanagan, Columbia, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

This action arises from the late delivery of pump motors in connection with the construction of a pumping station at the Henryton Hospital Center in Marriotsville, Maryland. The parties are Hanks Contracting Inc. (the general contractor), Insurance Company of North America (Hanks' surety on payment and performance bonds), Fields Construction Co. (one of Hanks' subcontractors), Colt Industries, Inc. (the manufacturer of the pumps), Flow Industries, Inc. (a Colt distributor) and Reliance Electric Company (the manufacturer of motors used in the pumps). The parties have asserted a wide variety of claims, counterclaims and cross-claims against one another as to which a number of motions to dismiss or for summary judgment have been filed.[1]

Two legal issues are raised by the pending motions: (1) is a claim for negligent misrepresentation viable under Maryland law in the context of a construction dispute between business contractors in which only economic loss is claimed; and (2) are limitation of liability clauses in the distributor agreement and contract documents between Colt and Flow valid.

---

1. Since a factual record has been established, the motions to dismiss will be treated as ones for summary judgment.

*Negligent Misrepresentation Claims*[2]

The pumps in question were sold by Flow to Fields.[3] The initial purchase order called for delivery of the pumps on February 1, 1984, but they were not delivered on that date. The basis for Hanks' negligent misrepresentation claim against Flow is that, in July 1984, Hanks allegedly began to make inquiry to Flow regarding the delivery of the pumps and was periodically advised that the pumps would soon be delivered. In fact, they were not delivered until November 21, 1984. In the third party complaint which it has filed against Colt, Flow admits that "the actual delivery date of the pumps was much later than the date of delivery represented by ... Flow to Hanks" but alleges that the reason for this is that Colt misrepresented to Flow when actual delivery would be made. Colt, in turn, claims that, if it made any misrepresentations to Flow in that regard, it was because of misrepresentations made to it by Reliance.

Maryland recognizes the tort of negligent misrepresentation. It includes five elements:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement, and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 337, 439 A.2d 534, 539 (1982); *accord*

*Flaherty v. Weinberg,* 303 Md. 116, 135, 492 A.2d 618, 627–28 (1985); *Ward Development Co. v. Ingrao,* 63 Md.App. 645, 654, 493 A.2d 421, 426 (1985).

■ The issue here presented is whether, in regard to the first of these elements, the parties owed any duty of care to one another.[4] For purposes of analysis a distinction must be drawn between parties who were in privity to one another and those who were not. As to the latter (specifically, here, Hanks, on the one hand, and Flow, Colt and Reliance, on the other), *Jacques v. First National Bank,* 307 Md. 527, 515 A.2d 756 (1986), although not directly on point, seems to provide a rather clear answer. There, in a general review of the state of the law, the Maryland Court of Appeals posited that "if the risk created by negligent conduct is no greater than one of economic loss, generally no tort duty will be found absent of showing of privity or its equivalent." 307 Md. at 537, 515 A.2d at 761. Economic loss is all that is alleged here, and there is no "special relationship" between the parties not under contract to one another which constitutes the equivalence of privity. Indeed, the parties deliberately structured their relationships, against the background of well-established construction law and practice, to insulate themselves from one another. For a court to disregard these relationships and to find the substantial equivalence of privity where the parties themselves had intentionally avoided it would be contrary to reason. It would also hopelessly entangle construction litigation which, all too frequently, is already a morass.

■ The question of whether Colt owed a "duty of care" to Flow is somewhat different. Flow and Colt were in privity, and *Jacques* therefore may be said to suggest

---

2. The parties appear to be agreed that Maryland law applies to the question of whether any of them has a viable claim for negligent misrepresentation. No reason is evident for this Court to hold otherwise.

3. Hanks originally was the party to the sales agreement with Flow. However, Hanks and Flow agreed to the cancellation of that agreement, and Fields then agreed to purchase the same pumps from Flow at the same price. Subsequently, Fields defaulted on the project and, now being insolvent, has not defended against or asserted any of the claims in this action.

4. Questions relating to the falsity of the alleged misrepresentations and the other four elements are also presented but they are factual in nature and are not raised by the present motions.

that they did owe a duty of care to one another. However, *Jacques* was not itself a negligent misrepresentation case, and the Court of Appeals did not pretend to foretell all of the circumstances under which a tort duty will be imposed upon parties in a direct relationship with each other. Thus, it is too facile to posit the equation that *Martens Chevrolet* plus *Jacques* automatically equals a tort duty upon those in privity to use reasonable care in what they say to one another.

Of course, there are situations in which the imposition of such a duty is proper. As in *Martens Chevrolet*, the seller of a business should not be permitted to benefit from his own negligence in misrepresenting the financial condition of his business where the contract of sale did not disclaim any representations which he had made. Likewise, as in *Ward Development Co. v. Ingrao, supra*, a housing developer should be held responsible for a grossly inaccurate estimate of water and sewer connection charges which he has made for the benefit of prospective individual homeowners who have no realistic means to check the accuracy of the estimate. However, it would be quite another thing to hold that whenever two businessmen have a contract between themselves, they are under a tort duty of care to one another for statements made during the course of their relationship. As the Supreme Court has stated under analogous circumstances, if the law in this area "were allowed to progress too far, contract law would drown in a sea of tort." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986).

The Maryland Court of Appeals has traditionally exhibited a like regard for maintaining a proper distinction between tort and contract law. Thus, for example, it has firmly proscribed the recovery of punitive damages in purely contract actions.

**5.** It should also be noted that the statements of anticipated delivery dates upon which the negligent misrepresentation claims here are based are projections of future events. As such, to the extent that they were promissory in nature, they may be enforced only by contract remedies, not even in an action for fraud. *See, e.g., Fowler v. Benton*, 229 Md. 571, 578–79, 185 A.2d 344, 349

*See, e.g., H & R Block, Inc. v. Testerman*, 275 Md. 36, 44, 338 A.2d 48, 52 (1975). More directly germane here is its straightforward affirmation of the fundamental principle that "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle*, 224 Md. 591, 595, 168 A.2d 879, 882 (1961). To hold in cases such as the present one that a contractual relationship itself provides the duty of care necessary for the maintenance of a negligent misrepresentation claim would be to turn this principle into a syllogism. The contract, in effect, would become an "independent duty imposed by law."

Against this background this Court finds that the claim for negligent misrepresentation asserted here by Flow against Colt is not proper under Maryland law. In so finding this Court intends no sweeping pronouncement concerning the circumstances under which a negligent misrepresentation claim may be asserted. The question can arise in too many different contexts and has been addressed too infrequently by the Court of Appeals presently to permit a judicious delineation of the reach of the tort. Where, however, as here, the controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen, it is plainly contract law which should provide the rules and principles by which the case is to be governed. *Cf. Wood Products, Inc. v. CMI Corp.*, 651 F. Supp. 641, 648 (D.Md.1986).[5]

*Effectiveness of Limited Liability Clause*

The distributorship agreement between Flow and Colt contained a clause providing as follows:

(1962); *Appel v. Hupfield*, 198 Md. 374, 379, 84 A.2d 94, 96 (1951). It would be rather anomalous to hold that, to the extent that they are something less than promissory, they are more broadly remedial in tort. *But cf. Ward Development Co. v. Ingrao*, 63 Md.App. at 656, 493 A.2d at 427.

Under no circumstances shall Fairbanks Morse [trade name for Colt] have any liability for liquidated damages or for collateral, consequential or special damages or for loss of profits, or for actual losses, or for loss of production or progress of construction, whether resulting from delays in delivery or performance, breach of warranty, claims of negligent manufacture or otherwise. Distributor acknowledges that in entering into this agreement, it has not relied on any representation made by Fairbanks Morse as to market condition or the profitability of the distributorship.

A substantially similar provision was contained in the general terms and conditions which were part of the sales contract for the pumps here in question. The sales contract also contained a provision making the exclusive remedy against Colt one for repair and replacement.

By their terms these clauses bar Flow from recovering any of the damages which Flow is attempting to recover from Colt in this action. Flow contends, however, that the clauses are invalid.[6]

■ Flow first argues that the exclusive remedy of repair or replacement provided for in the sales contract failed of its essential purpose, and that this failure voided not only the exclusive remedy but the clause disclaiming consequential damages as well. There is a substantial question as to whether the exclusive repair and replacement warranty did, in fact, fail of its essential purpose. This is not a case in which the inherently defective nature of the product made the product unrepairable and the exclusive remedy worthless. *Cf. Computerized Radiological Services, Inc. v. Syntex Corp.*, 595 F.Supp. 1495, 1510 (E.D.N.Y.1984), *aff'd in part, rev'd and remanded in part on other grounds*, 786 F.2d 72 (2d Cir.1986). Rather, the case is one in which the repair and replacement remedy is immaterial because it is delayed delivery, not product defect, which is alleged. In any event, Flow's argument is without mer-

it since New York is clear that the failure of a limited remedy of its essential purpose does not render invalid an independent clause limiting the damages which are recoverable. *See, e.g., Computerized Radiological Services, Inc. v. Syntex Corp., supra*, at 1510; *American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F.Supp. 435, 458 (S.D.N.Y.1976); *Cayuga Harvester, Inc. v. Allis–Chalmers Corp.*, 95 A.D.2d 5, 16, 465 N.Y.S.2d 606, 614 (1983).

■ Flow next contends that the limitation of liability clauses are unconscionable. This contention too is without merit. Because the transactions here involved are commercial ones involving business entities, the clauses are presumptively valid. *See, e.g.* N.Y.U.C.C. Law Section 2–719(3) (McKinney 1964); *see also Long Island Lighting Co. v. Transamerica Delaval, Inc.*, 646 F.Supp. 1442, 1458 (S.D.N.Y. 1986); *Cayuga Harvester, Inc. v. Allis–Chalmers, supra*, 95 A.D.2d at 20, 465 N.Y.S.2d at 617. All that Flow has proffered to overcome this presumption is that it is a smaller business than is Colt and that the clauses are unfavorable to it. Self-evidently, these factors alone are insufficient to entitle Flow to have the issue of unconscionability submitted to the fact finder.

■ Flow's final argument is that, at the time the contract for the sales of the pumps was entered into, Colt negligently misrepresented that it could make delivery of the pumps in a timely fashion. Flow asserts that this misrepresentation voided the contract's limitation of liability clause. The two cases cited by Flow, *American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F.Supp. at 460, and *Long Island Lighting Co. v. Transamerica Delaval, Inc., supra*, at 1458, do not support its position. They hold only that a defendant may not rely upon the provisions of a contract, including one disclaiming liability for consequential damages, where the defendant acted fraudulently or in bad faith.

---

**6.** The distributor agreement provides that it shall be construed in accordance with the laws of New York, and the parties are agreed that New York law governs the validity of the clauses here in question.

Here, Flow has made no allegation (and on the state of the record could make no allegation) that Colt so acted.[7]

A separate order is being entered herewith granting summary judgment effecting the rulings made in this memorandum. Since Colt is entitled to summary judgment on all of the claims asserted against it and since any liability of Reliance to Colt presupposes Colt's liability to others, summary judgment will be entered in favor of Reliance as to all of the claims asserted against it by Colt.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 7th day of March 1988

ORDERED

1. Summary judgment is entered in favor of Flow Industries, Inc. against Hanks Contracting, Inc. as to the counterclaim for negligent misrepresentation asserted by Hanks against Flow;

2. Summary judgment is entered in favor of Colt Industries, Inc. against Hanks as to the counterclaim for negligent misrepresentation asserted by Hanks against Colt;

3. Summary judgment is entered in favor of Reliance Electric Company against Hanks as to the counterclaim for negligent misrepresentation asserted by Hanks against Reliance;

4. Summary judgment is entered in favor of Colt against Flow as to all claims asserted in the third party complaint asserted by Flow against Colt; and

5. Summary judgment is entered in favor of Reliance against Colt as to the all claims asserted by Colt in its fourth-party complaint against Reliance.

---

7. It should also be noted that a common fallacy in all of Flow's claims against Colt is that it appears to ignore the limitation of liability clause in the distributor agreement itself. This clause would seem (1) to bar any recovery of consequential damages even assuming that Flow had a tort claim for negligent misrepresentation against Colt; and (2) be unaffected even if the limitation of liability clause in the sales contract was itself voided because of the failure of that contract's exclusive remedy or the fact that it was negligently induced.