John A. HERBERT; Juanita L. Herbert, Plaintiffs–Appellants,

v.

Mary C. SAFFELL, a/k/a Greaver; Charles H. Greaver; Carl R. Baldus, Jr.; Rachel M. Pfaender; Baldus Real Estate, Inc., a Maryland Corporation, Defendants–Appellees.

No. 88–3826.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1989.

Decided June 8, 1989.

Stephen J. Kleeman, Baltimore, Md. (Law Offices of Stephen J. Kleeman, on brief), for plaintiffs-appellants.

John G. Packard (Wiley & Engel, on brief), Philip W. Jaeger, Washington, D.C., for defendants-appellees.

Before WIDENER, MURNAGHAN, and WILKINSON, Circuit Judges.

MURNAGHAN, Circuit Judge:

John and Juanita Herbert, the appellants, filed a diversity action asserting claims under Maryland law for fraud, breach of contract, negligence, and negligent misrepresentation against Charles and Mary Greaver ("Greavers"),[1] from whom the Herberts had purchased waterfront property, as well as against the real estate agency, its president and the selling agent who arranged the sale of the property to the Herberts. After purchasing the property, the Herberts discovered that soil conditions and other terrain problems precluded installation of a conventional septic system on the property for sewage disposal. Without a functioning septic system, the property was, for all practical purposes, uninhabitable.

The district court dismissed the Herberts' complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a legally sufficient claim, and alternatively, dismissed under Fed.R.Civ.P. 41(b), which permits an involuntary dismissal for failure to prosecute, or for failure to comply with the Federal Rules of Civil Procedure or with any court order. The district court concluded that the realtor and the selling agent knew nothing about the soil conditions on the property, had no legal duty to investigate those conditions, and thus had

---

1. Mary Greaver is also known as Mary Saffell. For simplicity's sake, however, we refer to her and her husband collectively as the "Greavers".

no duty to disclose information about the soil to the Herberts. The court also held that the realtor and selling agent made no misrepresentations to the Herberts about the property.

In addition, the district court held that an "as is" clause in the sales contract required dismissal of all claims against all the defendants, including the former owners of the property. Alternatively, the court dismissed the case under Rule 41(b) because the Herberts' attorney had failed to comply with the court's orders requiring submission of status reports on the plaintiffs' attempts to obtain state approval for installation of an innovative and experimental sewage disposal system.

## I. BACKGROUND

In 1984, John and Juanita Herbert, who were living in Florida, decided to buy a retirement home in Maryland. The Herberts contacted Rachel M. Pfaender, a real estate agent employed by Baldus Real Estate, Inc. ("Baldus"), about various property listed for sale. Pfaender, Baldus, and Carl R. Baldus, Jr., the agency's president, were named as defendants in the Herberts' lawsuit. Pfaender showed the Herberts a listing for waterfront property in Charles County, Maryland. The listing stated that the property was to be "sold 'as is'[;] no warranties on anything," and added that the land contained the "[o]riginal septic system" on which there was no warranty. The listing also stated that the house on the property had no indoor plumbing or toilet, but emphasized that a bathtub and various bathroom fixtures were already installed. In addition, the listing stated that the property had a 300–foot well and a new pump and that the water supply "just needs to [be] hooked up [and] run into [the] house."

The Herberts agreed to purchase the waterfront property from the Greavers, who were both later named as defendants in the Herberts' lawsuit. The sales contract contained an "as is" clause, reading:

All improvements on this property, including water supply and septic system are accepted by the purchaser, "as is",

with no presentation, promise or warrenty [sic] by the sellers or the agents as to their condition, or compliance with government requirements, code, regulations, or notices.

The seller and the agent are released from all liability by the purchaser regarding the above. Purchasers acknowledge that the septic system serving the property does not function properly, and all repairs and expenses required to correct same are the sole responsibility of purchaser.

The contract further provided that:

All notices of violations of local ordinances or requirements, issued by legal authority or prosecutions in any court on account thereof against or affecting the property at the date of the settlement of this contract shall be defended or complied with by the seller and the property conveyed free hereof.

After purchasing the property, the Herberts began to install a new septic system. However, the Maryland Department of Health and Mental Hygiene issued a cease and desist order and informed the Herberts that the soil conditions made the property "unsuitable for an on-site sewage disposal system" and told them that the state had notified the Greavers of that fact before the Herberts had purchased the property. The Herberts later filed suit.

## II. RULE 41(b) DISMISSAL

 We turn first to the district court's dismissal of the Herberts' complaint under Rule 41(b) because if that dismissal was proper we can avoid unnecessary consideration of state law questions. The district court dismissed the complaint because the Herberts' counsel failed to file timely status reports, which the court had ordered to allow it to monitor attempts to find an alternative sewage disposal system for the waterfront property.

"A dismissal with prejudice [under Rule 41(b) ] is a harsh sanction which should not be invoked lightly in view of 'the sound public policy of deciding cases on their merits.'" *Davis v. Williams*, 588 F.2d 69, 70

(4th Cir.1978) (citations omitted). *Accord, Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir.1982) (*per curiam*). District courts must take four factors into account in deciding whether Rule 41(b) dismissal is appropriate as a sanction:

(1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a 'drawn out history of deliberately proceeding in a dilatory fashion', and (4) the existence of sanctions less drastic than dismissal.

*Id.*

Here, the district court abused its discretion in dismissing the Herberts' complaint under Rule 41(b). *See Davis*, 588 F.2d at 70 (reviewing dismissal for abuse of discretion). Although we do not condone the lackadaisical response of the Herberts' counsel to the district court's deadlines for submission of the reports, we see no evidence of deliberate delay. The attorney claims that informal conversations with the district judge's law clerk led him to believe that the court would permit late filings. Of course, the attorney should have made a formal motion requesting an amendment of the court's deadlines for submission of the reports. Even so, his failure to do so does not alone justify Rule 41(b) dismissal. *See Chandler*, 669 F.2d at 920. Nor do we agree with the district court that the untimely filings prejudiced the defendants. We see no evidence that the late filings of the status reports prolonged the litigation by hindering efforts to install an alternate sewage disposal system. Most importantly, we see no evidence that the district court considered other, less drastic, sanctions to compel compliance with its order.

Under those circumstances, the district court should not have granted Rule 41(b) dismissal. We, therefore, must review the district court's alternative dismissal of the Herberts' complaint under Rule 12(b)(6).

### III. SUMMARY JUDGMENT VS. RULE 12(b)(6) DISMISSAL

■ Although the district court labeled its alternative holding as a Rule 12(b)(6) dismissal, we will treat it as a summary judgment for purposes of the Herberts' appeal. All parties agreed at oral argument before us that the dismissal could properly be considered a grant of summary judgment because the district court considered materials outside the pleadings in making its ruling. Rule 12(b)(6) allows a district court to convert a motion to dismiss for failure to state a claim into a motion for summary judgment, provided the parties receive "reasonable opportunity" to present all pertinent materials. *George v. Kay*, 632 F.2d 1103, 1106 (4th Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981). All parties had such opportunity. The defendants submitted documentary evidence in support of their motion to dismiss. In response, the Herberts filed a memorandum to which they attached various exhibits, including deposition transcripts. Moreover, the Herberts had attached various exhibits to their amended complaint. The Herberts had ample opportunity to bring forth evidence to show that genuine issues of material fact remained. "The 12(b)(6) motion was therefore effectively, if not formally, treated as a motion for summary judgment." *George*, 632 F.2d at 1106.

### IV. "AS IS" CLAUSE

■ The district court erred in holding that the "as is" clause in the contract barred all claims against the defendants. The Herberts have based their claims on the failure of the defendants to reveal that the soil and other terrain conditions precluded use of a conventional septic system on the waterfront property. The "as is" clause provided that "[a]ll *improvements* on this property, including water supply and septic system are accepted by the purchaser, 'as is'...." (Emphasis supplied). As a matter of law, not to mention common English usage, the contract's reference to "improvements" would not include natural features of the property, such as soil composition, that are at issue here. The defendants conceivably could have drafted an "as is" clause that would have encompassed the natural state of the land. How-

ever, they did not do so and thus cannot rely on the "as is" clause to avoid liability.

## V. LIABILITY OF THE SELLERS[2]

Although the district court erred in dismissing the claims based upon the contract's "as is" clause, we will not automatically reverse the judgment below. Instead, we must examine the evidence to decide whether genuine issues of material fact remain that would allow the Herberts to survive summary judgment on each claim. We conclude that the Herberts should be permitted to proceed on their claims for fraud and negligent misrepresentation against the Greavers, but not on the remainder of their claims.

### A. *Fraud*

Under Maryland law, a defendant who conceals a material fact for the purpose of deceiving the plaintiff may be held liable for fraud if such concealment created or perpetuated a false impression on which the plaintiff reasonably relied to his or her detriment. *Fegeas v. Sherrill,* 218 Md. 472, 476–77, 147 A.2d 223, 225 (1958); *Finch v. Hughes Aircraft Co.,* 57 Md.App. 190, 232, 469 A.2d 867, 888, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985). "However, mere nondisclosure of facts known to defendant without intent to deceive is not fraud and is not actionable under Maryland law unless there exists a separate duty of disclosure to plaintiff by defendant." 57 Md.App. at 232, 469 A.2d at 888. *Accord Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 323, 389 A.2d 887, 903 (1978).

Because the Herberts have pointed to no special duty of disclosure here, they can succeed on their fraud claim only by proving intent to deceive. The evidence in the record would allow a reasonable fact finder to infer that the Greavers intended to mislead the Herberts about the capability of the waterfront property to sustain a conventional septic system. State health officials had warned the Greavers, the for-

mer owners, about the soil and terrain problems less than a year before they sold the property to the Herberts. Moreover, the language in the real estate listing and the sales contract could reasonably be interpreted as a deliberate effort by the property owners to conceal the seriousness of the sewage disposal problems. The sales contract never intimated that the property could not support a conventional septic system. Instead, it emphasized that the existing system did "not function properly" and that the Herberts would bear sole responsibility for "all repairs" to the system, seeming to imply that installation of a new septic tank or repair of the old one would solve the disposal problems. Furthermore, the real estate listing stated that although the house had no indoor plumbing, there were already pipes and various bathroom fixtures installed and emphasized that the water supply "just need[ed] to [be] hooked up." A jury could reasonably conclude that such "partial and fragmentary" information about the plumbing served only to mislead the Herberts about the true nature of the waste disposal problems, and that the Greavers intended to convey such a misimpression. *See Fowler v. Benton,* 229 Md. 571, 582, 185 A.2d 344, 351 (1962) (directed verdict inappropriate where property owner misled buyer by furnishing only "partial and fragmentary" statements about adequacy of septic system).

The defendants argue, however, that the Herberts cannot proceed to trial because they have suffered no damages, a prerequisite for success on a fraud claim. *See James v. Weisheit,* 279 Md. 41, 44, 367 A.2d 482, 484 (1977) (damages requirement). Although the Herberts apparently have received permission from the state to install an alternative waste disposal system on their property, we cannot say as a matter of law that they have suffered no injury. At the time of oral argument, the alternative system was not yet in operation, even though the Herberts had bought the property in 1984. There is evidence that the sewage disposal problems have delayed the

---

**2.** Although the Herberts asserted a negligence claim against the Greavers in the district court, they failed to brief the issue on appeal. We, therefore, deem the claim abandoned.

Herberts' use of their property and have resulted in unanticipated expense. At the very least, that evidence raises a factual dispute that precludes summary judgment.

### B. *Negligent Misrepresentation*

The tort of negligent misrepresentation has five elements under Maryland law:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Weisman v. Connors*, 312 Md. 428, 444, 540 A.2d 783, 791 (1988), *quoting Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337, 439 A.2d 534, 539 (1982).

█ Only the first element of the tort presents a potential bar to the Herberts' claim at the summary judgment stage. It is not obvious on first glance that the Greavers either asserted a false statement[3] or owed any duty of care to the Herberts. However, upon close examination of the record, we conclude that the Herberts should survive summary judgment.

A jury could reasonably find that the Greavers made false statements to the Herberts about the sewage disposal situation. The case involves more than a mere failure to disclose information. *Cf.* note 3, *supra*. The former owners undertook to speak about the sewage disposal problems by emphasizing the need to "repair" the existing septic system, but in doing so disclosed only part of the picture, creating an impression that a conventional septic system was feasible. Moreover, the owners emphasized the existence of pipes and bathroom fixtures in the house. A jury could reasonably conclude that such "partial and fragmentary" information conveyed a misimpression about the seriousness of the disposal problems and in essence represented a false statement. *See Fowler*, 229 Md. at 582, 185 A.2d at 351 ("partial and fragmentary" statements of fact, which create a misimpression because of non-disclosure of other material facts, may constitute misrepresentation).

To satisfy the first element of the tort, the Herberts must also demonstrate that the Greavers owed them a duty of care in making representations about the property. Where, as here, the alleged misrepresentation posed a risk of economic loss, but not personal injury, the Maryland courts will not impose a duty of care on the defendants unless the parties were in contractual privity or an equivalent relationship. *See Weisman*, 312 Md. at 446–51, 540 A.2d at 792–94. Here, the parties had not yet entered a contract when the Greavers made many of the alleged misrepresentations. However, even those alleged misstatements were made in anticipation of a possible contractual relationship. That fact raises a jury question in Maryland as to whether the parties had a sufficiently close relationship to justify imposing a duty of care on the Greavers. *See id.* (pre-contractual negotiations). Summary judgment was, therefore, inappropriate on the Her-

---

3. The Herberts must prove the existence of a "false statement" to prevail on the first element of the tort. Although Maryland courts have suggested that plaintiffs might recover for negligent misrepresentation even in the absence of a false statement under certain circumstances, that theory of recovery is unavailable to the Herberts. The Maryland Court of Appeals has assumed, without deciding, that a mere failure to disclose information, even absent intent to deceive, might represent negligent misrepresentation if the defendant had a duty to speak. *See Leonard v. Sav–A–Stop Services, Inc.*, 289 Md. 204, 213, 424 A.2d 336, 340 (1981). However, the Herberts have failed to show that Maryland law would impose such a duty on the Greavers. Certainly, the Greavers owed no fiduciary duty to the Herberts, with whom they engaged in an arm's length transaction. *Cf. Proctor v. Holden*, 75 Md.App. 1, 18, 540 A.2d 133, 141 (fiduciary duty includes duty to disclose material information to principal), *cert. denied sub nom. Holden v. Freeman & Kagan*, 313 Md. 506, 545 A.2d 1343 (1988).

berts' claim against the Greavers for negligent misrepresentation.

## C. *Breach of Contract*

██ The Herberts assert that the Greavers' failure to disclose information about the soil conditions violated a clause in the contract requiring the seller to convey the property free of violations of local ordinances or outstanding legal orders. We disagree. The Herberts have produced no evidence that the property was in violation of any laws or legal orders at the time of settlement. Although it appears that the state had warned the Greavers that sewage disposal through a conventional septic system on the property would violate health regulations, it is undisputed that no waste disposal was taking place through such means when the Herberts purchased the property. The septic tank remained disconnected from the plumbing inside the house at the time of sale. The plain language of the contract clause appears to cover only those conditions which violated ordinances or legal orders at the time of settlement— not those conditions that conceivably could give rise to future violations if the new owners made certain changes. The Herberts have produced no evidence that the parties' intent differed from the plain language of the contract clause. Accordingly, summary judgment was appropriate on the breach of contract claim against the Greavers.

## VI. LIABILITY OF REALTORS

Whereas the Herberts should survive summary judgment on two of their claims against the Greavers, they have failed to demonstrate any chance of success on their claims against the real estate agency, its president and the selling agent (hereinafter "realtors"). We analyze each claim below.

## A. *Fraud and Breach of Contract*

██ The Herberts have attempted to resurrect on appeal the fraud and breach of contract claims that they apparently abandoned in the district court. Their memorandum in opposition to the defendants' motion to dismiss included the following concession:

> Plaintiffs will concede that at this point in their discovery, the cause of action in fraud against the real estate agents, as well as the cause of action in contract, are somewhat in doubt due to the fact that it appears that the Realtors were not advised by the Greavers of the actual condition of the property.

Although we are inclined to consider that statement as an abandonment of the fraud and breach of contract claims, we need not decide the issue because the Herberts have failed to raise a genuine issue of material fact as to either claim against the realtors. The Herberts have produced no evidence, beyond bald allegations in the pleadings, that the realtors knew of the soil conditions on the waterfront property. In fact, the Herberts have virtually conceded the realtors' lack of knowledge of the problem. Absent such knowledge, the realtors committed no fraud. *See Finch*, 57 Md.App. at 231, 469 A.2d at 888 (no fraud unless falsity of misrepresentation known to defendant). The contract claim must also fail. Although the Herberts allege that they hired the realtors to find them a retirement home, we see no evidence in the record to support that assertion or to suggest that the realtors had personally contracted with the Herberts.[4] Summary judgment was therefore proper on the breach of contract and fraud claims against the realtors.

## B. *Negligence and Negligent Misrepresentation*

██ The Herberts' claims for negligence and negligent misrepresentation must also fail. Those claims are premised on the alleged failure of the realtors to use due care to investigate and disclose information about the soil conditions that precluded use

---

4. Of course, the realtors helped to negotiate the contract of sale between the Herberts and the Greavers. To the extent the realtors were engaged in contract negotiations as agents of the Greavers, however, they may have bound the Greavers, but not themselves, to a contractual relationship with the Herberts. *See A.S. Abell Co. v. Skeen*, 265 Md. 53, 56, 288 A.2d 596, 597 (1972); *Harrell v. Sea Colony, Inc.*, 35 Md.App. 300, 303, 370 A.2d 119, 121 (1977).

of a conventional septic system on the waterfront property. Although we assume, without deciding, that the relationship between the Herberts and the realtors was sufficiently intimate to give rise to a tort duty of care under Maryland law, *see Weisman*, 312 Md. at 451, 540 A.2d at 794 (requiring at least the equivalent of contractual privity), the Herberts have failed to show that the scope of that duty would encompass the obligation on the part of the realtors to make an independent investigation for hidden defects on the property.

There is no evidence that the realtors did anything but accurately report the information the Greavers furnished to them. We also have seen no evidence, beyond bald allegations, that the realtors had any reason to doubt the accuracy of the information provided by the Greavers. Under those circumstances, we know of no duty of care that the realtors violated.

We acknowledge that Maryland courts have not completely foreclosed the possibility of imposing a duty on realtors to make reasonable investigations of the conditions of the property they market. In *Ward Development Co. v. Ingrao*, 63 Md.App. 645, 493 A.2d 421 (1985), the Maryland Court of Special Appeals noted that a real estate broker and real estate selling agent had been held liable to home purchasers for negligent misrepresentation. However, the court had no occasion to consider the propriety of the judgment against the realtors because only the housing developer, who also was held liable for negligent misrepresentation, had appealed. Moreover, the developer's appeal focused not on the existence or scope of the duty of care owed to home buyers, but rather on other elements of the tort. We, therefore, refuse to read *Ingrao* as endorsing the imposition of tort liability on realtors for failure to investigate for hidden defects and to report the findings to prospective buyers.[5]

In addition, although the Maryland Court of Special Appeals has held that realtors do not owe a fiduciary duty to prospective purchasers under most circumstances, it has observed that courts in other states have held realtors liable to property buyers under other theories. *Proctor v. Holden*, 75 Md.App. 1, 19 n. 7, 540 A.2d 133, 142 n. 7 (1988), *cert. denied sub nom. Holden v. Freeman & Kagan*, 313 Md. 506, 545 A.2d 1343 (1988), *citing Byrn v. Walker*, 275 S.C. 83, 267 S.E.2d 601 (1980) and *Easton v. Strassburger*, 152 Cal.App.3d 90, 199 Cal.Rptr. 383 (1984). *Easton* announced a particularly broad theory of liability, holding that a seller's real estate broker had a duty "to conduct a reasonably competent and diligent inspection of the residential property listed for sale and to disclose to prospective purchasers all facts materially affecting the value or desirability of the property that such an investigation would reveal." 152 Cal.App.3d at 102, 199 Cal. Rptr. at 390 (footnote omitted).

However, we decline to interpret *Proctor*'s neutral observation about *Easton* as approval of the California approach to realtor liability. We properly leave to Maryland courts the innovation necessary to effect such a sweeping change in Maryland law.

Courts in other states have also looked to state licensing statutes or realtor codes of conduct to determine whether real estate agents owe a duty of care to prospective buyers. *See* Note, *Imposing Tort Liability on Real Estate Brokers Selling Defective Housing*, 99 Harv.L.Rev. 1861, 1864 (1986). When the Herberts purchased the waterfront property, a Maryland statute authorized suspension or revocation of a real estate broker's license if he or she committed the following acts:

> Negligence, or *failure to disclose or to ascertain and disclose to any person with whom such licensee is dealing, any material fact*, data, or information, concerning or relating to the property with which such licensee is dealing, which such licensee knew or should have known.

---

5. Although the Maryland Court of Appeals has cited *Ingrao* for the proposition that a tort duty of care may arise in an arm's length business transaction, *see Weisman*, 312 Md. at 450–51, 540 A.2d at 794, we do not interpret that as a pronouncement on the existence or scope of duty owed by realtors to prospective purchasers of property.

Md.Ann.Code art. 56 § 224(r) (1988) (emphasis added), *superseded by* Md.Ann.Code art. 56A § 4–322 (1988).[6] We have found no Maryland appellate court decision that has relied on the licensing statute to impose on realtors a duty of care to buyers in tort cases. However, one trial court in Maryland has used the statute as a basis for determining the duty owed by a real estate agent to a property purchaser in a negligence case. *See Pride Mark Realty, Inc. v. Mullins,* 30 Md.App. 497, 498–500, 352 A.2d 866, 867–68 (1976) (appeal from Prince George's County Circuit Court). However, the Maryland Court of Special Appeals in *Pride Mark* refused to review the propriety of the trial judge's decision because the realtor had failed to object to the judge's jury instructions at trial. *Id.* at 509, 352 A.2d at 873. We know of no other court in Maryland that has addressed the issue.

Although the state licensing standards may invite a holding that all realtors in Maryland owe a duty of care to property buyers, we see no evidence that the Maryland Court of Appeals would expand the tort duty that far in a case such as the one before us. That court, in a case remarkably similar to the present one, suggested that a realtor, when acting as an agent of the seller, has no duty to investigate the property for defects and to report such conditions to prospective buyers. *See Fowler,* 229 Md. at 583–84, 185 A.2d at 352. *Fowler* upheld a directed verdict in favor of a realtor who had reassured property buyers of the adequacy of a septic system, even while deciding that a jury could reasonably hold the former owner of the property, who had made virtually the same reassurances as the realtor, liable for fraud. *Id.* The *Fowler* court reasoned that

> there was no showing that either Halley [the real estate broker] or Garber [the real estate agent] knew anything about

the size of the system, or the permit issued for its installation, *or that there was any obligation upon their part to have such knowledge.*

*Id.* at 584, 185 A.2d at 352 (emphasis added). Although *Fowler* did not address the state licensing standards imposed on realtors, the Court of Appeals presumably was aware of those standards since Maryland law had long allowed revocation of licenses of real estate agents who failed to discover and disclose material information about property to persons with whom they dealt. *See, e.g.,* Md.Ann.Code (of 1951), art. 56, § 232(r) (Supp.1957).

Moreover, we hesitate to impose a duty on realtors to investigate property and report defects to prospective buyers because such an obligation could conflict with the fiduciary duties that realtors normally owe to property sellers under Maryland law. *See Proctor,* 75 Md.App. at 21, 540 A.2d at 142 ("The broker cannot act for both the seller and buyer in the same transaction because of the potential conflict of interest").

Finally, Maryland courts have recognized that duties imposed by statute do not necessarily create duties of care for purposes of negligence cases. *See, e.g., Jacques v. First National Bank of Maryland,* 307 Md. 527, at 534, 515 A.2d 756, at 759 (1986); *Murphy v. Baltimore Gas & Elec.,* 290 Md. 186, 428 A.2d 459, 464–65 (1981). Maryland's decision to allow revocation of licenses of realtors who commit certain acts does not indicate a similar intent to impose tort liability on realtors for those same acts. Imposing a tort duty to investigate property for defects could greatly increase the cost of the realty business and, consequently, the level of fees charged by realtors. Maryland may one day decide that the need to protect prospective buyers outweighs the risk of higher costs to consumers. But, as of yet, we see no indication

---

**6.** The new provision authorizes the state Real Estate Commission to

deny a license to any applicant, reprimand any licensee, or suspend or revoke a license if the applicant or licensee: ... (4) intentionally or negligently fails to disclose to any person

with whom the applicant or licensee deals a material fact that the licensee knows or should know that relates to the property with which the licensee or applicant deals.

Art. 56A § 4–322.

that the Maryland legislature or Maryland courts have struck such a balance.

We conclude that the realtors owed no duty to the Herberts under Maryland law to exercise care in investigating the soil conditions and other terrain features that might impede use of a septic system on the waterfront property. Accordingly, the district court properly dismissed the Herberts' claims against the realtors for negligence and negligent misrepresentation.

## VII. CONCLUSION

The district court abused its discretion in dismissing the Herberts' complaint pursuant to Fed.R.Civ.P. 41(b). However, treating the district court's alternative Rule 12(b)(6) dismissal as a grant of summary judgment, we affirm as to all of the Herberts' claims, except those for fraud and negligent misrepresentation against the Greavers. As to those two claims, we reverse and remand for further proceedings.

The parties have not mentioned the status of the Greavers' cross-claims which sought recovery from the realtors for any amounts for which the Greavers were held liable to the Herberts. The district court's dismissal of the Herberts' claims would have mooted any cross-claims still pending at the time against the realtors.

To avoid possible prejudice to the Greavers, the district court on remand should reinstate their cross-claims against the realtors unless those cross-claims had already been dismissed for reasons other than mootness. We, of course, do not mean to foreclose the realtors from raising any appropriate defense to the cross-claims.[7]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

---

7. We deny the appellants' motion to supplement the record. The additional materials, which pertained to the Rule 41(b) dismissal, would have provided no assistance to the Court in deciding the appeal.