CARPENTER ET AL. *v.* DAVIES, INDIV. AND
T/A COUNTY SERVICES, INC., ET AL.

[No. 13, September Term, 1975.]

*Decided October 7, 1975.*

The cause was argued before MURPHY, C. J., and
SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL,
JJ.

*Robert N. Stokes, Jr.,* with whom were *Walter B. Dorsey*
and *Dorsey & Rue* on the brief, for appellants.

*David M. Williams* for appellees.

SMITH, J., delivered the opinion of the Court.

In this case, unlike many we have had, there is no
question but that the appellees, Leslie Eugene Davies *et al.*

(the Broker), were the procuring cause of the sale of land of the appellants, Howard S. Carpenter *et al.* (the Seller).

The Seller listed his land with the Broker's agent. The Broker brought the land to the attention of the ultimate purchaser with whom he had had prior dealings. This was the first knowledge the purchaser had that this tract was for sale. The purchaser directed the Broker to communicate an offer to the Seller at less than the listing price. The buyer gave some indication to the Broker that he would go higher. The Broker encountered some difficulty in making contact with the Seller to advise him of this offer. The buyer was so anxious to buy that he went to see the Seller. When the Broker was finally able to reach the Seller by telephone the buyer was in the Seller's office but did not realize the call was from the Broker. He did understand that someone desired to purchase the property. He then raised his offer to one of $50 per acre more than the listing price ($50 less than the amount then requested by the Seller). A sale was then effected upon the basis of this offer.

This suit was brought when no commissions were paid by the Seller to the Broker on this sale. The case was heard without a jury. The trial court rendered a judgment in favor of the Broker for commissions based upon the original listing price.

The Seller, in his attempt to avoid payment, has alleged that the Broker forfeited his right to commissions because (1) he "breached his fiduciary duty as broker-agent for [the Seller] to obtain . . . by the exercise of his diligence and zeal, the most advantageous bargain possible under the circumstances"; (2) he failed to inform the seller of any facts which might affect his actions or judgment; (3) he failed to act in good faith to further the interests of his principals; and (4) he "breached his fiduciary duty as broker-agent for [the Seller] to apply his skill, diligence and zeal for the exclusive benefit of his principals." His final argument is that "the listing agreement was void and unenforceable because against public policy and illegal."

The short answer to the first four contentions is that the

trier of fact was not persuaded by the evidence adduced by the Seller, stating, "[W]e are not satisfied that there is sufficient evidence of fraud or breach of his fiduciary duty to defeat his claim for that commission against the sellers." This was after an earlier statement, "I am not satisfied that Mr. Jamison's evidence shows anything about Mr. Davies' conduct that leads me to believe that he violated his duty. Perhaps it is susceptible of that sort of interpretation but I think it is equally susceptible of an innocent explanation than one found on the duty on his part to inform himself, not alone his Listing seller but from any source that was available to him or brought to his attention as to what the true facts about the title of this property were." Maryland Rule 886 is applicable. The trial judge saw and heard the witnesses. We are not persuaded that he was clearly in error in his evaluation of the evidence. We are of the opinion that the evidence adduced does not warrant a ruling as a matter of law.

The final contention concerns the provision in Maryland Code (1957, 1972 Repl. Vol.) Art. 56, § 224 by which the Real Estate Commission of Maryland may suspend or revoke any license under the provisions of the subtitle "Real Estate Brokers" (Art. 56, §§ 212-232) where the licensee "is deemed to be guilty of" certain specified acts. Subsection (o), to which reference is made by the Sellers, forbids "accepting a listing contract to sell property unless such contract provides for a definite termination date without notice from either party . . . ." It is conceded in this instance that the initial contract was a statement by the Seller on the back of an envelope setting forth the number of acres in the tract in question and the desired selling price per acre to which the Seller appended his signature. The Broker sent the agent back to get a signed contract. The expiration date was not filled in on the contract as executed. The formal listing agreement was dated August 3, 1972. The Broker approached the buyers the week of October 15. The contract of sale was dated October 30, 1972. It will be seen that we are not here faced with a situation where a Broker after a long lapse of time produces a buyer ready, willing, and able to

buy at the listing price, but the Seller refuses to sell and the Broker then demands his commission.

We do not understand the General Assembly in its enactment of Art. 56, § 224 (o) to have said that if a broker takes a listing agreement without an expiration date and in fact sells the property to the satisfaction of the individual listing the property with the Broker that the Broker may not collect a commission for the sale. It is tacitly conceded in this case that but for the action of the Broker in bringing this land to the attention of the buyer the sale would not have been effected. The Seller overlooks the fact that we have said it is not necessary for a broker to have a written listing agreement in order for him to collect commissions on a sale. An oral contract with a broker is sufficient for him to claim his commissions. *Ricker v. Abrams*, 263 Md. 509, 517, 283 A. 2d 583 (1971), citing *Glaser v. Shostak*, 213 Md. 383, 387, 131 A. 2d 724 (1957). Indeed, Judge Henderson said for the Court in *Leimbach v. Nicholson*, 219 Md. 440, 446, 149 A. 2d 411 (1959), "Employment may be implied from conduct, and need not be supported by evidence of a written, or even explicit oral, agreement. *Heslop v. Dieudonne*, 209 Md. 201, 206; *Glaser v. Shostak*, 213 Md. 383, 387; Code (1957), Art. 2, sec. 17." Thus, even if the written listing contract were invalid the Broker actually making a sale, duly accepted as this was by the Seller, would be entitled to his commission.

If it is the intent of the General Assembly that in circumstances such as this the Broker should be precluded from recovering commissions, no doubt it will so state.

*Judgment affirmed; appellants to pay the costs.*