584 A.2d 1325

**Lynne M. LEWIS, et vir.**

v.

**LONG & FOSTER REAL ESTATE, INC., et al.**

**No. 475, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 1, 1991.

David A. Carney (Conwell F. Sapp and Reese and Carney, on the brief), Columbia, for appellants.

Timothy G. Casey, Rockville, for appellee, Long & Foster.

Thomas M. Meachum (James K. Eagan, III and Wilkinson, Guida & Eagan, P.A., on the brief for appellee, Columbia Town Center Title Co.), Columbia, for appellees.

Argued before ROBERT M. BELL, FISCHER, JJ., and EDWARD O. WEANT, Jr., J. (retired) Specially Assigned.

EDWARD O. WEANT, Jr., Judge, Specially Assigned.

Dissatisfied with the turn of events following the purchase of a home, appellants filed suit in the Circuit Court for Howard County against their real estate broker, his employer, and their title company.  Appellants' suit against

appellees Blaine K. Milner and Long & Foster Real Estate, Inc. (Long & Foster) sounded in negligence, negligent misrepresentation, and breach of contract.[1] Appellants charged appellee. The Columbia Town Center Title Company (Title Company), with breach of contract and negligence. The circuit court dismissed all counts for failure to state a claim on which relief can be granted. Appellants now present the following issues to this Court:

    I.   Whether a real estate agent representing the buyer owes that buyer a duty of care to investigate restrictions which would affect the buyer's known intended use of the property being purchased.

    II.   Whether the title abstractor/settlement agent's duty to report to the buyer all matters of record affecting the status of title includes restrictions on the use of the property.

· We shall affirm in part and reverse in part.

## FACTS

In 1986, appellants, Lynne Lewis and James Lewis, lived in a rented home in Howard County. Mrs. Lewis, a licensed family day care provider, operated a day care business in their residence.

In April, 1986, appellants sought assistance from Blaine Milner in locating a residence for sale in the Columbia, Maryland area. Milner is an employee and licensed sales broker of appellee Long & Foster. Appellants informed Milner that Mrs. Lewis wished to continue operating her day care business and that they required a residence suitable for that purpose.[2]

Milner showed appellants property in the Merion Station Townhouse complex of Harper's Choice Village in Columbia. Milner made inquiries concerning the operation of day

---

1.  Breach of contract issues were not addressed in appellants' brief.

2.  Appellants, in fact, needed Mrs. Lewis' income from her business to make their monthly mortgage payments.

care in the area, and relayed the information he obtained to appellants. Specifically, Milner told them Mrs. Lewis would need only to obtain a permit from the Harper's Choice Village for in-house business related activities. Appellants decided to purchase the property. There is no indication in the record or claim by the broker that a contingency clause was placed in the contract.

Milner and Long & Foster recommended the appellee Title Company for the examination of the property's title and other services related to settlement. Appropriate paperwork was forwarded to the Title Company, and it conducted all services necessary to effect the settlement. Settlement was held at the offices of the Title Company on October 30, 1986. There is some dispute as to who was present at settlement.

Appellants refurbished and remodeled their property to accommodate Mrs. Lewis' day care business. She obtained approval from the Village Board to operate her business and began caring for children on a daily basis in November, 1986. On March 20, 1987, Mrs. Lewis received a letter from the Merion Station Homeowners' Association (the Association) informing her that the Association considered the use of the residence for a day care business to be in violation of restrictions in the subdivision.

The Restrictions and Declaration of record which affect appellants' property include, *inter alia,* a Declaration which states in pertinent part

"... No dwelling or any part thereof shall be used for any purpose except as a private dwelling for one family, nor any business of any kind be conducted therein...."

It is undisputed that the appellees failed to tell appellants about this restriction at or prior to settlement on their property.

In July, 1987, the Association filed suit in the Circuit Court for Howard County seeking a declaratory judgment confirming that day care activities violated the restrictions and requested reimbursement for the cost of the proceed-

ing. Judge Raymond Kane ruled that the family day care operation violated the "no business" provision of the restrictions and enjoined the continued use of the property for that purpose. Mr. and Mrs. Lewis appealed to this Court. We remanded the case to the circuit court holding that, pursuant to Chapter 491, Acts of 1989, effective July 1, 1989, homeowners' associations could not prohibit day care services unless at least fifty percent of the association's members voted to do so.[3] While that case was pending, appellants brought suit against Milner, Long & Foster, and the Title Company. Following the trial court's dismissal of that action for failure to state a claim on which relief can be granted, appellants brought this appeal.

## STANDARD OF REVIEW

Under Maryland Rule 2–322 a motion to dismiss for failure to state a claim serves the same function as a demurrer. *Sharrow v. State Farm Mutual,* 306 Md. 754, 768, 511 A.2d 492 (1986). Such a motion is appropriate when there is no justiciable controversy. *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934 (1985). In considering the legal sufficiency of appellants' complaint, we must assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings. Any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against appellants as the pleader of the complaint. *Sharrow, supra,* 306 Md. at 768, 511 A.2d 492.

## DISCUSSION

### I.

Appellants first contend that a real estate broker owes a duty of care to the buyer whom he or she represents, and

---

**3.** The Association has filed a Petition for Certiorari to the Court of Appeals.

that, under a broker's duty, he is required to investigate restrictions on property which would affect a buyer's known use of that property. Implicit in appellants' argument is that the trial court erred in its failure to recognize this duty and, consequently, in its dismissal of appellants' complaint. Specifically, appellants contend that, because they had informed Milner of their desire to operate day care services in their home, Milner and Long & Foster owed them a duty to investigate and report on the restrictions in Harper's Choice Village which prohibited home businesses. To this end, appellants urge us to create a duty of care in real estate brokers which has been resisted by the Court for many years. In this instance, we agree that such a duty may exist.

Appellants maintain that the Maryland legislature has imposed a tort duty on real estate brokers through statute and regulation. They direct us to the Maryland Business and Professions Annotated Code [4] which lists grounds for, *inter alia*, the suspension or revocation of a real estate broker's license. According to Md.Bus.Occ.Code Ann., § 16–322(a)(4) (1989 and 1990 Supp.), a broker's license may be in jeopardy if the broker

> intentionally or negligently fails to disclose to any person with whom the applicant or licensee deals a material fact that the licensee knows or should know and that relates to the property with which the licensee or applicant deals.

Section 16–322(a)(33) further states that a broker's license can be revoked or suspended if a broker

> violates any regulation adopted under this title or any provision of the code of ethics.

Md.Bus.Occ.Code Ann., § 16–322(a)(4) and (33) (1989 and 1990 Supp.).

---

**4.** In their brief, appellants reference Art. 56, §§ 212 through 232 which, they note, were repealed effective October 1, 1988, and recodified in the Business Occupations and Professions Volume of the Annotated Code of Maryland. We will use the current provisions of the Code.

The code of ethics for real estate brokers is contained in the Code of Maryland Administrative Regulations, Title 9, Subtitle 11. The regulations advise that a real estate broker "shall protect and promote the interests of the client" endeavoring "always to be informed regarding laws." COMAR 09.11.02A and B. Brokers are further directed to "make a reasonable effort to ascertain all material facts concerning every property for which he accepts that agency." COMAR 09.11.01.D.

The issue of whether a standard of care is imposed by these statutes or their precursors was raised in *Pride Mark Realty, Inc. v. Mullins*, 30 Md.App. 497, 352 A.2d 866 (1976). While the Court was intrigued by the prospect of basing a standard of care on the statutes, the issue was not properly reserved for review and was not addressed.

The Maryland legislature has seen fit to regulate the field of real estate sales through these statutes and regulations. As a regulated profession, much like physicians, attorneys, or certified public accountants, real estate brokers have a responsibility to the public to conduct themselves in a reputable manner. These statutes set minimum guidelines for professional conduct, their purpose being to safeguard the public.

Numerous jurisdictions have looked to published ethical standards and licensing requirements to determine a standard of care for real estate brokers. *Johnson v. Geer Real Estate*, 239 Kan. 324, 720 P.2d 660, 665 (1986). (The purpose of a real estate broker's licensing act is clearly to require high standards of conduct by real estate brokers licensed in the state and to protect members of the public who deal with real estate brokers.) *Menzel v. Morse*, 362 N.W.2d 465 (Iowa 1985). (Real estate brokers' code of ethics established an acceptable standard which could be used as a benchmark for measuring the conduct of real estate brokers.) *Hagar v. Mobley*, 638 P.2d 127 (Wyo.1981). (Real estate brokers and salesmen are licensed by the state and required to meet high standards of honesty, integrity,

trustworthiness, and competence; failure to satisfy those standards is actionable.)

The Maryland Real Estate Commission maintains a guaranty fund to protect persons who suffer financial loss due to the misconduct of a real estate broker. The fund provides compensation when there is a loss arising from, *inter alia,* fraud or misrepresentation by a licensed real estate broker. Md.Bus.Occ.Code Ann. § 16–404. A real estate broker is obligated to provide written notice to each buyer of property that the buyer's protection through the guaranty fund is limited to $25,000. § 16–405. There is no suggestion in the code that the guaranty fund is to be the exclusive remedy for persons aggrieved by a real estate broker. We can take guidance from the Supreme Court of Kansas which queried how the public interest could be advanced "if those members of the public who deal with brokers have no remedy for breaches of conduct ... other than to complain to the ... Real Estate Commission?"

It is well-settled in Maryland law that a real estate broker's liability is founded on the law of agency. This Court, however, recognizes that a real estate broker cannot serve two masters.

> During the term of agency, a real estate broker cannot act for both vendor and vendee in respect of the same transaction because of possible conflict between his interest and his duty in such case....

*Proctor v. Holden,* 75 Md.App. 1, 18, 540 A.2d 133 (1988) (citations omitted).

▮ Typically, a seller is the broker's client because it is the seller who pays the broker's commission. This puts the broker in a fiduciary relationship with the seller which requires a high degree of loyalty and good faith. The broker owes no fiduciary duty to the buyer whose interests are adverse to the seller, *Proctor* at 19, 540 A.2d 133.

▮ The Court in *Proctor* acknowledged that it is possible for a broker to be responsible to the buyer.

> In the limited situations where the purchaser retains a broker to serve as his agent, the fiduciary duty attaches. In these cases, the purchaser agrees to pay the broker's fees.

*Id.* at 19, n. 6, 540 A.2d 133.

Appellants make no allegations that they paid an initial fee to hire Milner and Long & Foster. The customary practice in the real estate trade, however, does not require a buyer to pay a fee to engage a real estate broker's services. When a real estate broker locates a buyer for listed property, the listing agent and the buyer's agent divide the commission. The commission is a percentage of the purchase price that is paid by the buyer. When a buyer enlists the services of a real estate broker, there is an implicit understanding by all parties that the broker will receive a fee, via a commission, at the culmination of the sale. Even though a buyer's purchase money passes through several hands before reaching his broker's pocket, a buyer's broker clearly receives a fee from his client.

The question of whether an agency relationship has been created is one for the jury. *Knopf v. Mercantile–Safe Deposit & Trust Co.,* 252 Md. 293, 301, 250 A.2d 96 (1969). In their brief, appellants claim that they can produce evidence which could prove an agency relationship. An oral agreement is sufficient in Maryland law to support the establishment of an agency relationship with a real estate broker. *Carpenter v. Davis,* 276 Md. 174, 177, 345 A.2d 58 (1975). (An oral contract with a broker is sufficient to claim his commissions.)

In the past, Maryland law has held that no agency relationship exists between a buyer and a real estate broker. *Proctor, supra,* 75 Md.App. at 19, 540 A.2d 133; *Hardy v. Davis,* 223 Md. 229, 232, 164 A.2d 281 (1960); *Herbert v. Saffell,* 877 F.2d 267, 275–76 (4th Cir.1989); *Fowler v. Benton,* 229 Md. 571, 584, 185 A.2d 344 (1962). In these cases, however, only one real estate broker represented both the seller and the buyer of property. Appellants' situation is factually distinguishable. Milner and Long &

Foster did not have a relationship with the seller of the home appellants purchased. That home was listed by another broker. The question of whether appellants and Milner and/or Long & Foster entered into an agency rela tionship is one for the fact-finder.

If the fact-finder decides that an agency relationship, thus a fiduciary duty, existed between the parties, it must then determine whether there was an implied agreement between the parties. Appellants contend that they "indicated" to Milner their need for a suitable residence in which Mrs. Lewis could continue operating a day care business. Milner was not a stranger to the appellants. He knew firsthand about Mrs. Lewis' business because she provided care for his child in her home.

A real estate broker has no duty to investigate and report on defects which might exist in property. *Herbert, supra,* at 275–76; *Fowler, supra,* 229 Md. at 583–84, 185 A.2d 344. That duty changes, however, when the parties are not conducting an arm's length transaction. When a relationship of trust and confidence exists or when specific questions are asked concerning some aspect of a transaction, a duty of disclosure can arise. *Fegeas v. Sherrill,* 218 Md. 472, 479, 147 A.2d 223 (1958).

> An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered, or is about to enter, into a contract concerning the goods which are, or are to be, its subject, is another.

*Weisman v. Connors,* 312 Md. 428, 447, 540 A.2d 783, 810 (1988) *quoting International Products Co. v. Erie R. Co.,* 244 N.Y. 331, 155 N.E. 662, 664 (1927).

In the case *sub judice,* Milner undertook the task of locating and investigating property that was suitable for appellants' day care business. In doing so, he assumed the duty to provide accurate information to the appellants. Whether he used reasonable care in the performance of this duty, is a question which should be answered by a fact-finder.

We hold that there were sufficient facts alleged in appellants' complaint to make a dismissal for failure to state a claim inappropriate. A justiciable controversy existed and, consequently, the circuit court erred in dismissing the action.

## II.

Appellants also contend that the broker of the Title Company had a duty to report to the buyer all matters of record affecting the status of the title including restrictions on the use of the property.[5]

One who undertakes to examine a title for compensation is bound to exercise a reasonable degree of skill and diligence in the conduct of the transaction. The liability of the title examiner, although often enforced through an action in negligence, is actually contractual in nature. Since the liability of the title examiner is contractual, it may be limited in its scope by apt and clear language brought home to the employer. *Corcoran v. Abstract & Title Company*, 217 Md. 633, 637, 143 A.2d 808 (1957).

In *Red Lobster Inns of America, Inc. v. Lawyers Title Insurance Corp.*, 656 F.2d 381 (8th Cir.1981), a title company agreed, in writing, prior to undertaking the title search, to evaluate the potential use of property as a restaurant. When the title examiners failed to inform the buyers of a restriction which prohibited restaurant businesses, the court found the title company liable.

In the case *sub judice*, liability rests on the instruction given by appellants to the Title Company. We are at a loss to assess the instructions the Title Company received because no "contract" appears in the record.

In their brief, appellants assert that a "general discussion" was held at the settlement table. We remind appel-

---

5. Although appellants acknowledge that a cause of action against a title examiner is contractual, their argument sounds in tort. They provide us with precedents from other jurisdictions in which title examiners owe a duty of care to a purchaser of property.

lants that only facts appearing in the complaint are considered in review of a motion to dismiss for failure to state a claim.

We hold that appellants' action against the Title Company is without justiciable controversy. The circuit court did not err in its dismissal of the action.

JUDGMENT DISMISSING SUIT AGAINST BLAINE K. MILNER AND LONG & FOSTER REAL ESTATE, INC. REVERSED.

JUDGMENT DISMISSING SUIT AGAINST THE COLUMBIA TOWN CENTER TITLE COMPANY AFFIRMED.

COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS AND APPELLEES.