712 A.2d 24

**Marcia A. LOPATA et vir.**

v.

**Eugene MILLER et al.**

**No. 706, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

June 24, 1998.

78

Edward J. Lopata, Marcia S. Lopata, Arnold, for appellants.

Jonathan P. Kagan, Rignal W. Baldwin, Jr., Brassel & Baldwin, P.A., Annapolis, for appellees.

Submitted before MOYLAN and KENNEY, JJ., and PAUL E. ALPERT, Judge (retired), Specially Assigned.

KENNEY, Judge.

Appellants, Marcia and Edward Lopata, present questions arising from a lawsuit instituted by them against multiple defendants in the Circuit Court for Anne Arundel County. The lawsuit pertained to appellants' purchase of a parcel of real property with improvements known as "The Terraces" in Arnold, Maryland. Appellees, Mildred and Eugene Miller, real estate agents associated with the real estate brokerage, Champion Realty, Inc., coordinated the purchase. Appellants' complaint made the following claims against appellees: deceit by overt false representation, deceit by concealment, injurious falsehood, negligent misrepresentation, strict liability in tort, negligence, and breach of warranty. All counts related to the alleged discrepancy between the actual acreage of the proper-

ty and the acreage communicated to appellants by appellees during the course of the sale. The only counts at issue on appeal are the negligent misrepresentation, strict liability, and negligence claims.

On appellees' motion for summary judgment, the trial court entered judgment on the injurious falsehood, negligent misrepresentation, and strict liability counts. The court denied appellees' motion for summary judgment on the two deceit counts of the complaint. The court later granted appellees' Motion to Dismiss the negligence and strict liability counts. Appellants thereafter voluntarily dismissed the deceit counts and filed this timely appeal.

Appellants present a single question for our review, which we have divided and rephrased as follows:

I. Did the trial court err by granting summary judgment in favor of appellees on the negligent misrepresentation count, and dismissing the negligence count, of appellants' complaint?

II. Did the trial court err by dismissing the strict liability count of appellants' complaint?

## FACTS

In 1987, appellants decided to relocate from their home in Colechester, Maryland, to a comparable home on waterfront property. Their stated goals were to find a "nice home" with "some privacy" and a deep-water slip to accommodate their sailboat. To facilitate their new home search, they enlisted the aid of appellees, real estate sales agents whom appellants knew socially. Appellees obtained information about available houses from a multiple listing service (MLS) and attempted to select homes that met appellants' criteria. Appellees then showed various waterfront properties to appellants with the hope of finding a suitable match. Most of the homes selected from the MLS were in the range of $500,000 to $600,000.

Around August or September, 1987, appellees discovered, and brought to appellants' attention, a listing for a waterfront property called "The Terraces" in Arnold, Maryland. Al-

though the seller of the property asked a higher price than appellants originally sought to pay, the home met appellants' other criteria. Appellees showed the house to appellants, and relayed the data obtained from the MLS. One piece of information provided by the seller, reported in the MLS by the listing agent, and relayed to appellants by appellees, was the representation that The Terraces contained three acres of land. Appellants had an opportunity to view the actual print-out of the MLS before deciding to purchase the property. The representations on the MLS were qualified by the following admonition: "ALL INFORMATION DEEMED RELIABLE BUT NOT GUARANTEED—EQUAL HOUSING OPPORTUNITY."

After several visits to the property, appellants decided to purchase The Terraces. The sale closed after a series of contract negotiations over the course of two years. The final contract of sale included the following language:

CONDITION OF PROPERTY. It is mutually understood and agreed between the parties that the property is sold in "AS IS" condition unless otherwise specified in this agreement and the Purchaser(s) have personally examined the property to their satisfaction and do not rely upon any warranties or representations not contained in this contract.

\* \* \*

ENTIRE CONTRACT. This contract contains the final and entire agreement between the parties, and neither they nor their agents will be bound by any terms, conditions, statements, warranties, or representations, oral or written, not herein contained. The parties to this contract mutually agree that it is binding upon them, their heirs and each of their respective heirs, executors, administrators, personal representatives, successors, and assigns and that its provisions will survive the execution and delivery of the deed and will not be merged therein.

\* \* \*

NOTICE TO PURCHASERS. THE LISTING AND SELLING BROKERS, THEIR AGENTS AND EMPLOY-

EES, MAKE NO REPRESENTATIONS TO THE PUR-
CHASERS WITH RESPECT TO THE FOLLOWING:

\* \* \*

3. Lot size and exact location. If the subject property is part of a recorded subdivision, the Purchaser can review the plat upon request at the County record office. If the subject property is not part of a recorded subdivision, the Purchaser may verify exact size and location through a survey by a registered engineer or land surveyor.

Although the contract language did not specify the acreage of the lot, an addendum explicitly provided that the seller would convey "property with all riparian rights to the water-front—approx[imately] 440 feet on the water."

Appellants moved into the home and had lived there for more than three years when they first discovered that The Terraces contained only 1.87 acres, instead of three acres as they previously believed. They subsequently filed the suit from which this appeal is taken.

## I. Negligent Misrepresentation and Negligence Counts

Appellants argue that the trial court erred by granting appellees' Motion for Summary Judgment as to the negligent misrepresentation count of appellants' complaint. They make a similar argument with respect to the trial court's dismissal of their negligence claim. Appellants contend that appellees, as licensed real estate agents assisting appellants in the purchase of a home, owed a duty of care to appellants, which they breached by failing to verify the accuracy of the information provided in the MLS. Appellants argue that the trial court was legally incorrect in concluding that appellees did not owe this duty of care. According to appellants, the trial court based its grant of summary judgment on an incorrect legal principle, and thus, the entry of judgment should be reversed.

Appellees' first defense is that they did not owe appellants a duty to verify the information contained in the MLS because the listing and the contract of sale both expressly disclaimed such a duty. According to appellees, the contract of sale,

which did not contain any representation concerning the parcel's acreage, explicitly put appellants on notice that they had the option of hiring a land surveyor to ascertain the exact location, size, and boundaries of the property.

Appellees further respond that because appellants omitted to make a specific inquiry as to the precise size of the property, appellees were under no obligation to conduct an independent investigation to determine the acreage. They assert that, while a tort duty may arise between a buyer and a selling agent under some circumstances, no such duty exists requiring a selling agent to conduct an independent investigation of representations set forth in the MLS. According to appellees, if the buyer does not indicate that lot size is material to the sale, or make specific inquiry into the acreage contained in the lot, no tort duty arises and, thus, no action in negligence or negligent misrepresentation will lie.

 "In granting a motion for summary judgment, the trial court does not resolve factual disputes, but is instead limited to ruling as a matter of law." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 638–39, 679 A.2d 540 (1996)(citing *Heat & Power v. Air Products*, 320 Md. 584, 591, 578 A.2d 1202 (1990)). The standard for appellate review of a trial court's grant or denial of a summary judgment motion is whether the trial court was legally correct. *Id.* This Court reviews the same material from the record and decides the same legal issues as the circuit court, namely whether appellees had a duty to investigate the information provided to them by the seller. *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied, Scherr v. Nationwide*, 337 Md. 214, 652 A.2d 670 (1995). In making our analysis, we do not accord deference to the trial court's legal conclusions. *Post v. Bregman*, 112 Md.App. 738, 748, 686 A.2d 665 (1996), *rev'd on other grounds*, 349 Md. 142, 707 A.2d 806 (1998).

 In determining whether the trial court erred in granting a motion to dismiss, we accept as true all well-pleaded facts and allegations in the complaint, together with reasonable inferences properly drawn therefrom. *Simms v.*

*Constantine*, 113 Md.App. 291, 296–97, 688 A.2d 1 (1997) (quoting *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993)). " 'Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven.' " *Id.*

▮ "In Maryland, the prima facie elements of the tort of negligent misrepresentation are:

'(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.' "

*Sheets*, 342 Md. at 656–57, 679 A.2d 540 (quoting *Gross v. Sussex*, 332 Md. 247, 259, 630 A.2d 1156, 1162 (1993)).

▮ Negligent misrepresentation is a form of negligence. *Sheets*, 342 Md. at 646, 679 A.2d 540. In order to maintain an action in negligence, "a plaintiff must prove the existence of four elements: a duty owed to him, a breach of that duty, a causal connection between the breach and the injury, and damages." *Montgomery Cablevision Ltd. Partnership v. Beynon*, 116 Md.App. 363, 392, 696 A.2d 491 (1997), *cert. granted*, 347 Md 683, 702 A.2d 291, *cert. denied* 347 Md. 683, 702 A.2d 292 (1997) (quoting *Southland Corp. v. Griffith*, 332 Md. 704, 712, 633 A.2d 84 (1993) (citations omitted)).

Appellants' complaint listed "Facts Common to All Counts" in fourteen numbered paragraphs. The factual allegations most pertinent to our discussion are:

4. Prior to entering into the contract to purchase "The Terraces," material factual representations, which were relied on by [appellants] in purchasing the property, were

made in writing and orally to the plaintiffs that the real estate known as "The Terraces" was comprised of, *inter alia,* three (3) acres of land. [Appellants] learned on November 5, 1992 that the statements of fact that the property contained three (3) acres were false.

\* \* \*

6. [Appellees] ... showed and described the property to [appellants] and were the selling agents for "The Terraces", and thus, agents for [the seller]. At all times relevant to this claim, [appellees] represented to [appellants] that they were the agents for [the seller].

7. [Appellees] ..., prior to [appellants]' purchase of "The Terraces", stated as a fact to [appellants] that the property contained three (3) acres of land.

\* \* \*

10. ... [Appellants], relying on the representations of fact that the property contained three (3) acres of land made by ... [appellees], thereafter purchased "The Terraces" from [the seller].

\* \* \*

12. [Appellees] intended that their statements of fact, that "The Terraces" contained three (3) acres of land would be relied and acted upon by [appellants]. [Appellees] knew that if said statements were false that [appellants] would suffer losses and damages.

The negligent misrepresentation count of appellants' complaint maintained that appellees "owed [appellants] a duty of care to truthfully relate the true acreage of 'The Terraces[,'] but negligently failed to determine the true acreage and/or to relate the true acreage to [appellants]." It also asserted that appellees "misrepresented their agency relationship" with the seller, and that they "violated § 16–322 [now § 17–322] of the Maryland Code (1989, 1992 Cum.Supp.) of the Business Occupation and Professions Article." Appellants averred that appellees intended that they rely on the representations of the acreage with the knowledge that appellants' reliance on those

representations, if false, "would cause damage and injury" to them. Finally, the complaint stated that appellants "would not have purchased or paid the purchase price they paid for the property if they had known the truth that 'The Terraces' contained only 1.87 acres...."

The negligence count of the complaint contended that appellees "each owed a duty to the public and to [appellants] to exercise due diligence and reasonable care as licensed real estate agents" and that each owed appellants "a duty to comply with the applicable laws of Maryland, ... codes of conduct and/or ethics, and the industry standards...." Because of appellees' "conduct or lack of conduct" with regard to appellants and "as a direct result of their negligence[,]" appellants claimed to be damaged to the extent of $600,000. For particular instances of appellees' negligent conduct, appellants referred to the deposition testimony of expert real estate witnesses.

In granting appellees' Motion for Summary Judgment on the negligent misrepresentation count, the trial court suggested that the statutory disciplinary provisions for licensed real estate brokers may provide the basis for a legal standard of care. BUS. OCC. & PROF. § 17–322(a)(4); *Gross,* 332 Md. at 273–74, 630 A.2d 1156. The court qualified that suggestion by clarifying that "duties imposed by statute do not necessarily create duties of care for purposes of negligence cases." *Jacques v. First National Bank of Maryland,* 307 Md. 527, 515 A.2d 756 (1986). The trial court cited *Herbert v. Saffell,* 877 F.2d 267 (4th Cir.1989), as recognizing the possibility that Maryland real estate brokers someday might be required to conduct "a reasonable investigation of the conditions of the property they market," although it noted "that such a sweeping change in Maryland law had not yet been made."

After observing that *Gross* acknowledged a real estate broker's "duty to the general public," the court distinguished that general duty from the tort duty "to conduct an independent investigation to discover defects," concluding that there was no intent in *Gross* to depart from the general rule that an

independent investigation by a realtor is not required under the circumstances of appellants' case. In particular, the court noted that "The Terraces" was "irregularly shaped and wooded," and that it would "seem excessive to require the realtor to take independent steps to ascertain the lot size for the buyer's benefit, while not requiring at least the same of the buyer himself." The trial court also highlighted language from the contract of sale, in which the agents "expressly stated" that they made "no representations to the purchasers regarding lot size." Finally, the court stated that appellees had "provided sufficient basis ... to show that they each represented the seller, that they did nothing beyond relating the information provided to them by the seller, and that the agents did not otherwise know the property did not contain three (3) acres." Concluding that appellants "failed to show facts in detail and with precision to demonstrate that a genuine dispute of material fact exists," the trial court granted summary judgment in appellees' favor. The court subsequently signed an Order granting appellees' Motion to Dismiss appellants' negligence claim without making further findings of fact or conclusions of law.

None of the prior Maryland cases involving the potential liability of real estate agents to purchasers of property have addressed factual circumstances directly analogous to those presented by the instant case. In *Ward Development Co., Inc. v. Ingrao*, 63 Md.App. 645, 493 A.2d 421 (1985), the appellant was a developer who had been sued by thirteen homeowners in a Montgomery County subdivision. The homeowners convinced a jury that the developer, its real estate broker, and its selling agent misrepresented the cost of water and sewer connection charges in the course of selling the homes in the subdivision. On appeal to this Court, Ward argued that the homeowners' proof was legally deficient in that it did not establish misrepresentation of *material, past or existing* fact. After reviewing the origins of the tort of negligent misrepresentation in Maryland, the Court concluded that the homeowners presented testimony from which the jury could find that the cost of water and sewer connection was

material to the individual homeowner's decision to purchase a home in that subdivision. With regard to the "past or existing" fact issue, the Court stated:

> In the instant case, the homeowners relied on Ward and its agents as knowledgeable in the field of real estate. Ward, as the developer of the subdivision, and Behrens, as the real estate selling agent, held themselves out as knowledgeable in matters such as the charge for a sewer and water connection. The homeowners were entitled to rely on that estimate to a reasonable extent.

*Ward,* 63 Md.App. at 656, 493 A.2d 421.

In *Lewis v. Long & Foster Real Estate, Inc.,* 85 Md.App. 754, 584 A.2d 1325 (1991), *cert. denied,* 323 Md. 34, 591 A.2d 250 (1991), disappointed home purchasers sued their real estate broker, his employer, and their title company for negligently misrepresenting the land use restrictions affecting their property. The trial court dismissed all counts of the complaint for failure to state a claim. The home purchasers appealed to this Court, seeking to discover "whether a real estate agent representing the buyer owes that buyer a duty of care to investigate restrictions which would affect the buyer's known intended use of the property being purchased." *Lewis,* 85 Md.App. at 756, 584 A.2d 1325. Prior to the purchase of their Howard County townhouse, the Lewises advised their broker that they intended to operate a day care center on the premises, and inquired about any relevant restrictions. The real estate broker made a cursory investigation and informed the Lewises that they need only obtain a permit from the local governing body. The Lewises obtained the permit and proceeded to operate their day care facility until the subdivision homeowners' association sought a judgment declaring the use of the property to be in violation of the subdivision's restrictions. On appeal, this Court viewed the Lewises' application as urging it "to create a duty of care in real estate brokers which has been resisted by the Court for many years." *Id.* at 759, 584 A.2d 1325. The Court interpreted the statutory and regulatory standards for real estate professionals as setting "minimum guidelines for professional conduct, their purpose

being to safeguard the public," but ultimately concluded that a real estate broker's liability to an individual buyer is grounded in traditional principles of agency law. *Id.* at 760–61, 584 A.2d 1325. We held that an agency relationship may exist, and therefore give rise to a tort duty of care, where a broker is made aware of a buyer's anticipated particular use for the property.[1] Because the evidence in the Lewises' case could support this theory of agency, the Court ruled that the broker's motion to dismiss the claim was granted improperly.

*Gross, supra,* involved the construction and sale of a single family home in St. Mary's County. At the signing of the contract in April 1987, the purchasers were told by their builder and the listing real estate agent for the subdivision that the necessary building permits had been obtained and that the house could be completed in 120 days. In reliance on these representations, the purchasers sold their Charles County home and enrolled their children in St. Mary's County schools. In reality, the property had not been subdivided. The construction company did not obtain the building permits until October 1987 and did not complete the house until September 1988. The purchasers sued the builders and the real estate agent for, *inter alia,* negligent misrepresentation. The trial court ruled, and this Court affirmed, that motions for

1. Appellants rely on *Goldsten v. Burka,* 43 A.2d 712 (D.C.Mun.App. 1945), to defeat appellees' position on the effect of the integration clause in the contract of sale. In *Goldsten,* the prospective purchaser specifically asked the real estate broker whether the property in question was served by a septic system or public sewer. Before the purchaser signed the contract, the broker assured him that the home was connected with a public sewer. Thereafter, the purchaser learned from the seller that the home was served by a septic system, and refused to complete the contract. Although the contract contained an integration clause, the trial court decided that the purchaser could void the contract for misrepresentation. The Municipal Court of Appeals for the District of Columbia held that an agent of a seller can not cure prior misrepresentations by disclaiming them in the final contract. In our assessment, the import of *Goldsten* is its recognition that specific inquiries by buyers place a burden upon real estate professionals who venture to respond. In this respect, *Goldsten* is aligned with *Lewis.* We reject appellants' argument that the holding of *Goldsten* affects the validity of integration clauses generally.

summary judgment were properly granted in favor of the defendants. This Court noted that, in the absence of an agency relationship, the real estate agent owed no duty of care to the purchasers. The Court of Appeals reversed, stating that, notwithstanding the historic role of real estate brokers as agents for the seller, the liability of the listing agent for the subdivision had to be assessed in light of the statutory and regulatory guidelines for real estate professionals. In particular, the Court highlighted BUS. OCC. & PROF. § 16–322 (now § 17–322(b)(4)), which threatens license suspension or revocation whenever a licensed real estate professional "intentionally or negligently fails to disclose to any person with whom the applicant or licensee deals a material fact that the licensee knows or should know" pertaining to the property at issue. *Gross*, 332 Md. at 273–74, 630 A.2d 1156. Despite the real estate agent's defense that he served as an innocent conduit of information relayed by the seller, the Court concluded that, in the context of the professional guidelines, the purchasers had presented an issue of fact as to the agent's negligence.

Before this Court, appellants rely heavily on *Brock Bridge Limited Partnership, Inc. v. Development Facilitators, Inc.*, 114 Md.App. 144, 689 A.2d 622 (1997). The appellant in *Brock Bridge* was a builder who acted in reliance on a civil engineer's representation of the costs involved in a construction project. The contract between the builder and the engineer's company required the latter to prepare estimates and plans for the project. When the actual cost of construction far exceeded the estimate, the builder sued the engineer personally for negligent misrepresentation. The trial court held that the builder failed to present evidence to support the claim, concluding that "no duty to guarantee future costs which may arise, and which exceed estimated costs, arises as a duty of care outside a contractual agreement to guarantee such overages." *Id.* at 160, 689 A.2d 622. On appeal, this Court reversed that holding, relying on *Ward* for the proposition that the builder was entitled to rely on the engineer's representation as coming from one knowledgeable in a particular expertise. The Court determined that the engineer could be

liable for economic loss damages, however, only after concluding that he and the builder had a relationship equivalent to contractual privity because of his management role in the company with whom the builder contracted. *Id.* at 166, 689 A.2d 622 (citing *Jacques,* 307 Md. at 534–35, 515 A.2d 756). We believe *Brock Bridge* is factually distinguishable from the case at bar. The engineer, whose contractual obligation to the plaintiffs in that case was to predict accurately the costs of a measurable quantity of construction work, was held liable for misrepresenting the plaintiffs' expenses. *Brock Bridge* does not aid an analysis of whether appellees, who had no contractual relationship with appellants, and who, having no particular expertise in acreage determination, were not capable of determining the true acreage of the property without resort to other authorities, were required to verify information provided by the seller of the home.

Of the cases described above, we perceive that *Gross* most nearly resembles the instant appeal. In both cases, appellants urge the applicability of the statutory professional conduct standards as prescribing a tort duty of care owed by real estate agents to buyers in the absence of a traditional agency relationship. *Gross* is distinguishable, however, because in that case there was evidence that the real estate broker actually knew the falsity of its representations to the buyer. When there is no dispute as to the absence of actual knowledge on the part of the real estate agents, and the pleadings do not allege facts giving rise to a reason to know of a defect in the property, *Gross* is not analogous. It is significant that, in *Gross,* the subdivision had not been recorded, and thus, was not legally marketable at the time of contract. This is information that one could more reasonably assume that a licensed professional would seek and even verify.

Appellants admitted in their complaint that appellees' relationship with them, however familial, was not an agency relationship giving rise to a fiduciary duty. Furthermore, the record does not reveal any suspicious conditions, specific inquiries by the buyer, or other circumstances from which a

jury could conclude that appellees were required to conduct an investigation of the lot size. No Maryland cases have held real estate agents responsible for such inspections, either in general or under factually similar circumstances. Consequently, we will not interpolate a duty of the breadth and effect urged by appellants into the licensing and ethical provisions of the Maryland Code. We agree with the trial court that appellees did not owe appellants a duty to verify the lot size information relayed to them by the seller of "The Terraces." As there was no duty established, appellees could not have been negligent. The trial court correctly concluded that the negligent misrepresentation and negligence counts of appellants' complaint should be resolved by dispositive motions.

## II. Strict Liability Count

Appellants argue that the trial court erred by dismissing the strict liability count of their complaint because the claim was legally valid and supported by the alleged facts. According to appellants, Maryland public policy permits the maintenance of a strict liability claim against real estate agents who make affirmative, "non-innocent" misrepresentations to buyers of property. To support their public policy argument, appellants rely on the Maryland Consumer Protection Act, the professional guidelines enunciated in the Code of Ethics and Standards of Practice of the Maryland Association of Realtors, and the disciplinary provisions for licensed real estate agents and brokers set forth in BUS. OCC. & PROF. § 17–322(b)(4). They also cite a 1950 case from the District of Columbia for the proposition that a false statement, even if believed to be true by its maker, can still give rise to strict liability if presented as a statement of fact. *Stein v. Treger,* 182 F.2d 696 (D.C.Cir. 1950).

Appellees respond to the strict liability question by arguing that Maryland law does not provide a cause of action in strict liability against real estate agents who act as innocent conduits for information relayed by the seller of property or his agents. Appellees assert that the trial court correctly dismissed appellants' claim on that basis.

Appellants' complaint alleged that appellees "are strictly liable to [appellants] for stating as a fact that the real property conveyed to [appellants] contained three (3) acres of land when such statements were false."

Appellants first direct our attention to the Maryland Consumer Protection Act, arguing that the policy contemplated in the statute "condemns a seller and/or his agents from asserting affirmative facts that are not true." In light of the fact that the Maryland Consumer Protection Act specifically exempts real estate agents and brokers from its provisions, we reject appellants' arguments concerning its policy impact. Md.Code (1975, 1990 Repl.Vol.), § 13-104 of the Commercial Law II Article.

Appellants next urge that the self-imposed ethical standards and the statutory licensing and disciplinary procedures for real estate professionals. Article 9 of the Code of Ethics and Standards of Practice of the Maryland Association of Realtors requires:

The Realtor shall avoid exaggeration, misrepresentation, or concealment of pertinent facts relating to the property or the transaction. The Realtor shall not, however, be obligated to discover latent defects in the property or to advise on matters outside the scope of his real estate license.

Standard of Practice 9-8 states:

The Realtor shall be obligated to discover and disclose adverse factors reasonably apparent to someone with expertise in only those areas required by their real estate licensing authority. Article 9 does not impose upon the Realtor the obligation of expertise in other professional or technical disciplines.

The licensing statute permits reprimand or license penalties for a real estate licensee or applicant who "intentionally or negligently fails to disclose to any person with whom the applicant or licensee deals a material fact that the licensee knows or should know and that relates to the property with which the licensee or applicant deals." BUS. OCC. & PROF. § 17-322(b).

Appellants urge us to draw from these provisions a state public policy holding real estate agents strictly liable for a buyer's damages that result from any affirmative factual representation that turns out to be false or incorrect.[2] Instead, we read the provisions as having the more limited effect of prohibiting real estate agents from making affirmative misrepresentations and omissions of fact that the agent knows or has a duty to discover. Certainly, our reading is not consistent with holding appellees strictly liable to appellants under the facts of the instant case. As the trial court noted in its opinion and order, the property in question was irregularly shaped and partially wooded, and therefore, the acreage deficiency would not necessarily be reasonably apparent to someone whose expertise is limited to the requirements of a real estate licence. Appellees, at most, evinced a belief that the property contained three acres, and as we have concluded, they owed no duty to the purchasers to verify the seller's representation as to lot size. Their communication of the discrepancy in acreage, then, was not a misrepresentation or omission of fact that appellees knew or had a duty to discover under the circumstances. Appellants' public policy argument fails.

In its written opinion, the trial court stated that, "[a]ccepting all well-pleaded facts as alleged in the Complaint, the Court discerns no possible basis for holding any of the Defendants strictly liable in this case." For support, the court cited several cases without further explanation. *See Gross*, 332 Md. at 274, n. 10, 630 A.2d 1156; *Phipps v. General Motors Corp.,*

---

2. We note that appellants' argument runs counter to the approach Maryland courts have taken with regard to acreage discrepancy land sale cases. For example, in *Marcus v. Bathon*, 72 Md.App. 475, 531 A.2d 690 (1987), *cert. denied*, 313 Md. 612, 547 A.2d 189 (1988), a real estate agent relied on a surveyor's erroneous computation of the acreage in a 4.944 acre parcel and represented to the buyer that it contained approximately six acres. This Court held that, because neither the sellers nor their agent "knew that this representation of quantity was incorrect at the time it was made, and had no reason to question its accuracy," the buyer could not maintain an action in deceit. *Id.* at 482, 531 A.2d 690. In that case, like the instant one, the parcel was irregularly-shaped and difficult to measure.

278 Md. 337, 363 A.2d 955 (1976); *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 517 A.2d 1122 (1986)[3]. The cited passage from *Gross* reads as follows:

> The petitioners do not seek to hold the broker responsible for innocent misrepresentations made as a result of being a conduit of information between the seller and the purchaser, as some courts have done. [citations omitted] As such, *the petitioners are not seeking to change the legal relationship which has been recognized in Maryland as existing between real estate brokers and purchasers of real estate. In that regard, the petitioners align themselves with those states which have refused to impose strict liability on real estate brokers.* [citations omitted].

*Gross*, 332 Md. at 274, n. 10, 630 A.2d 1156 (emphasis added).

We agree that this language relied upon by the trial court accurately depicts the present state of Maryland law on the question of whether real estate agents may be held strictly liable for representations such as those made by appellees. Because appellants failed to state a cause of action, we will affirm the trial court's dismissal of their strict liability claim.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

---

3. The trial court did not cite specific passages of *Phipps* or *Pahanish*. We note that those cases pertain to strict liability claims in Maryland in the context of products liability.